[Crim. No. 2247.   Third Dist.   Nov. 20, 1950.]

In re WILLARD RAY MOULTON, on Habeas Corpus.

Don C. Mayes for Petitioner.

Samuel K. Brantley for Respondent.

VAN DYKE, J.—This is a proceeding in habeas corpus. Petitioner has been confined in the Merced County Jail under order of the superior court of that county which had adjudged him guilty of contempt in failing to obey an order of that court. The facts are these: Petitioner and Harriet Moulton are husband and wife. They have three children, ages 7, 5 and 2 years. On August 19, 1950, Harriet sued petitioner, Williard Moulton, for separate maintenance. She asked custody of the children pendente lite. The complaint was filed and on the same day the court issued an order, directed to petitioner as defendant to show cause why the plaintiff should not be given such custody. On the return day of the order, August 23d, a hearing was had. It appeared that on Friday, August 18th, at 11 p. m., petitioner had taken the children to Winnemucca, Nevada, where by prearrangement he was met by his sister and brother. He gave the children into their custody and they took them to Jackson, Wyoming, and to the home of the paternal grandparents. These grandparents had had the children in their care for about six weeks and until

July 29th when petitioner and his wife had brought them back to their California home.

Although petitioner had left with the children before the order to show cause was issued, he had been told on Friday before he left that his wife had seen an attorney concerning her proposed action. He told her he would not tell her what he was going to do, but testified he was considering taking the children to Wyoming and determined to do so sometime during the afternoon. During the hearing the court announced its intention of giving the children to the mother pending the trial of the issues and of making appropriate orders for their support. Thereupon the court asked how many days would reasonably be required to effect a return of the children and counsel for the petitioner stated he thought that about 10 days would suffice. The court thereupon orally announced its order that the children be returned on or before August 31st and that their custody was awarded to the mother. On September 1st, the children not having been returned, petitioner was ordered to show cause on September 5th why he should not be adjudged in contempt for disobedience of the order to return them. On September 5th the hearing was had on the order to show cause. Petitioner admitted that he had not returned the children, that they were with the grandparents in Wyoming and that he had not gone to Wyoming to get them. He testified that on the Sunday following the 23d of August, when the court had ordered them returned, he called his father long distance, told him of the court order and had been told that his father had consulted an attorney in Jackson and been informed that the Wyoming laws did not recognize any other state as having jurisdiction over children in Wyoming. The father advised petitioner to see an attorney. Further, petitioner testified that he saw his attorney and then called his father again and was told that a court proceeding was pending in the District Court of Teton County in Wyoming and that he could not have the children. He said he asked his father to meet him in Salt Lake City with the children, but was told his father wanted to talk to an attorney and would call him back. This petitioner's father did and told him that the attorney in Jackson would not allow the children out of the state. Petitioner testified he had not authorized any guardianship of the children in Wyoming, although while he had been there he had talked to an attorney and "rather anticipated" his wife's movement. He said he had neither signed nor authorized any petition to make the children wards

of the court in Wyoming. Although not sworn as a witness, petitioner's counsel, Mr. Mayes, stated to the court that he had contacted a Mr. Neilson in Jackson and been informed emphatically that the children would not be permitted to leave that state; that it was useless for petitioner to go to Wyoming, that they were getting a court order out at that time. When he, Mayes, asked for a copy of the order to keep his client out of jail, Mr. Neilson replied that he did not care whether petitioner was in jail or not. It appears from the record here that an order was made by the Wyoming court on September 6, 1950, placing the children in the custody of that court and in the care of the paternal grandparents.

At the hearing being discussed the court referred to the order it had given and declared petitioner in contempt for disobedience of that order. The court stated its belief that petitioner had no intention of ever bringing the children back and ordered petitioner into the custody of the sheriff to be incarcerated in the Merced County Jail until such time as the children were returned and placed in the custody of their mother. On that day the court caused to be filed a signed order adjudging petitioner in contempt for wilful disobedience of the previous order, "he having the ability to comply with said order" and ordering that petitioner be confined in the county jail "until said minor children . . . be returned to the State of California and delivered into the custody of the plaintiff." No fine was imposed and no determinate sentence of imprisonment was ordered.

"Since proceedings in contempt are in their nature criminal in character, and the court exercises but a special and limited jurisdiction in such matters, the record of the court upon which the party is adjudged guilty of contempt should show affirmatively upon its face the facts upon which the judicial action is based and upon which jurisdiction depended, the purpose of the requirement being to enable the appellate court to determine by an inspection of the record, whether a contempt has in fact been committed." (5 Cal. Jur. § 48, p. 952.)

It is strongly contended by petitioner that the record here is such that the court could not have found any contempt, but we think it is unnecessary to pass upon that matter since for other reasons we must hold that the commitment is void and the petitioner is entitled to his release. The court imposed no punishment for the contempt it found to have been committed within the limits set out in section 1218 of the Code

of Civil Procedure. That section reads as follows: "Upon the answer and evidence taken, the court, judge or justice must determine whether the person proceeded against is guilty of the contempt charged, and if it be adjudged that he is guilty of the contempt, a fine may be imposed on him not exceeding five hundred dollars, or he may be imprisoned not exceeding five days, or both." It is quite apparent that the commitment here is not a punishment for contempt since it does not purport either to fine or to imprison petitioner for a definite time as provided in the foregoing section. On the contrary, it is apparent that the court, passing over the punishment for the contempt which it found had been committed, proceeded under section 1219 of the Code of Civil Procedure to compel future obedience to the order of the court regarding the delivery of the children. That section provides: "When the contempt consists in the omission to perform an act which is yet in the power of the person to perform, he may be imprisoned until he have performed it, and in that case the act must be specified in the warrant of commitment." Such a judgment must not only specify the action to be performed; it must also include a finding that such act is and will be within the power of the contemnor to perform. (*In re Wells,* 29 Cal.2d 200, 202 [173 P.2d 811], and cases cited therein.) █ There is no finding here that the petitioner, whatever may have been his ability during the period for which he was found guilty of having been in contempt of court, would continue to have such ability after the imposition of the sentence of imprisonment. Searching the record for these jurisdictional requisites, we find that there is no allegation in the affidavit for order to show cause in regard to the contempt that the alleged contemnor, petitioner here, had had ability to deliver the children into the custody of the mother during the period given him by the court within which he was required so to do, that is, the period from August 23, 1950, when the children were awarded to the mother, to and including August 31st. The affidavit goes no further than to recite the making of the order and that it had not been obeyed. And in the order adjudging petitioner guilty of contempt, after reciting the issuance of the order alleged to have been disobeyed on August 23d and its service upon the defendant, the court declared only that it had been shown to its satisfaction by the affidavit of the mother and by testimony introduced at the hearing, that petitioner had been guilty of contempt "for willfully disobeying the court's order, he having the ability to comply with said order heretofore on

the 23d day of August 1950 made." It was then ordered that he was guilty of contempt and "that he be confined in the county jail until the said minor children, . . . be returned to the State of California and delivered into the custody of the plaintiff." Now, it is obvious that the ability to perform during the period he was given, at which time he was free of restraint, and the ability to perform during his indeterminate imprisonment, are vastly different matters. It is indeed difficult to see how petitioner, while in prison, could, through any effort of his own, cause the children, shown to be beyond the jurisdiction of the court and in the actual custody of persons likewise beyond that jurisdiction, to be delivered to the mother in California. But it was necessary to the validity of the order of indeterminate imprisonment that the court should make a finding of fact that such ability did exist and would continue to exist while petitioner was held in prison by the court order. There is no such finding. The bare finding as to ability which appears in the court order has to do with his ability to recover the children and deliver them during the period allowed him for that purpose. It has nothing to do with the jurisdictional fact of his continued ability to do so under the restriction of imprisonment. We cannot presume anything in support of this order. In contempt proceedings the whole record is to be strictly construed in favor of the accused and the usual presumptions in favor of the regularity of proceedings and judgment do not apply. (*In re Felthoven,* 75 Cal.App.2d 465, 470 [171 P.2d 47]; *Groves* v. *Superior Court,* 62 Cal.App.2d 559, 568 [145 P.2d 355].)

As we have said, we do not find it necessary to pass upon the sufficiency of the evidence to support the adjudication that petitioner had been guilty of contempt. Petitioner is not confined under any sentence imposed by way of punishment therefor. He is confined solely to enforce the order of the court in futuro and the record does not support the judgment of imprisonment imposed upon him for that purpose.

Let the prisoner be discharged, without prejudice to further action by the court in respect of its order for delivery of the children to the mother.

Adams, P. J., and Peek, J., concurred.