[Crim. No. 16186.    Second Dist., Div. Five.    May 20, 1969.]

In re DAVID K. LIU on Habeas Corpus.

Warren M. Goodwin for Petitioner.

John D. Maharg, County Counsel, and Jean Louise Webster, Deputy County Counsel, for Respondent.

ALARCON, J. pro tem.*—The petitioner, David K. Liu, has filed an application for a writ of habeas corpus to free him from the threat of further incarceration under an order of the Superior Court for Los Angeles County which found him in contempt and ordered his imprisonment until he has complied with certain court orders.

After reviewing the petition, this court issued an order to show cause on January 29, 1969, to be heard on February 20, 1969. The petitioner was ordered released on the posting of bail in the amount of $5,000.

## FACTS

Catherine Liu filed an action for separate maintenance on April 1, 1968 against the petitioner in this matter. The complaint prays for custody of the two children of the parties. It is also alleged in the complaint that "defendant and his father by threat and by force wrongfully has taken or remove [sic] Sue Mann Chiji Liu from her custody, and she is a child of tender year [sic] and now living with defendant and his father at 1344 Kellam Street, Los Angeles, California." An order to show cause was issued on the same date (April 1, 1968) requiring inter alia that David K. Liu show cause on April 15, 1968[1] why custody of the two children should not be awarded to Catherine Liu during the pendency of the action. On the same date and incorporated in the same document as the order to show cause the court issued a temporary restraining order which provided in pertinent part: "Pending . . . the hearing on this order . . . you are enjoined and restrained from:

1. Molesting, harassing, annoying or disturbing plaintiff in any manner whatsoever.

2. Removing daughter from the Southern California area.

3. (defendant or his father) removing the physical custody of her son James Chwan Lhyang Liu, who is residing with plaintiff, from the So. Calif. area."[2]

The order to show cause and the temporary restraining order were served on the petitioner, David K. Liu, on April 1, 1968. The affidavit of service contained in the court's record

*Assigned by the Chairman of the Judicial Council.

[1]On April 15, 1968, the hearing on the order to show cause was continued to April 22, 1968, by stipulation of the parties.

[2]The petitioner's father was not a party to the action for separate maintenance. The order of April 1, 1968, provided: "This order shall not be served upon any person not a party to this action."

does not indicate the time that personal service was made on the petitioner.

On April 22, 1968, custody of each of the children was awarded to Catherine C. Liu. The petitioner was awarded the right of reasonable visitation. He was restrained from removing the child James from the County of Los Angeles "without first obtaining a prior order of court or the written consent of plaintiff."

The petitioner was also ordered to return Sue to the mother's custody in Los Angeles at his expense no later than June 18, 1968.

Testimony was taken at the hearing of April 22, 1968, from Catherine C. Liu and David K. Liu, however, no reporter was present. The court made no finding that the petitioner had the present ability to return Sue to her mother. The minute order of April 22, 1968, does not indicate whether the evidence heard by the court supported the conclusion that the petitioner had custody of Sue as of April 22, 1968, or that he had had her in his custody since April 1, 1968. The minute order for that date is also silent as to whether the petitioner removed Sue from the southern California area after service was made of the April 1, 1968, temporary restraining order.

The record shows that on June 18, 1968, the petitioner appeared and testified. The matter was continued to August 19, 1968. Again the proceedings were not reported. The minute order for June 18, 1968, reflects that the matter was continued to August 19, 1968, "at which time" the defendant was ordered to produce Sue "to the jurisdiction of this court and to the custody of plaintiff." The minute order is silent as to whether the petitioner complied with the order of April 22, 1968, by producing Sue in court no later than June 18, 1968.

The minute order for August 19, 1968, indicates that the matter was placed off calendar at the request of plaintiff's counsel. Again the record is silent as to whether the petitioner returned Sue to the jurisdiction of the court on August 19, 1968, or to her mother as required by the order of June 18, 1968.

On December 27, 1968, the superior court issued an order to the petitioner requiring that he show cause why he should not be found guilty of contempt of court for wilfully disobeying the orders made on April 1, 1968, April 22, 1968, and June 18, 1968, based on the declaration filed by Catherine Liu. The declaration was incorporated in a form required to be used "exclusively upon all applications for Order to Show

Cause in Re Contempt in domestic relations cases.'' The declaration alleges: ''That defendant was enjoined from removing daughter Sue Mann Chiji Liu from Southern California area and did so remove her on April 1, 1968. That defendant was restrained from removing son James Chwan Sh Yang from custody of plaintiff and defendant di [sic] so remove him on November 7, 1968. That defendant was ordered to return daughter Sue Mann Chiji Liu to custody of plaintiff and defendant has failed and refused to do so and has in fact removed him [sic] from Southern California area. The Defendant had the ability to comply with each of the aforementioned orders but has wilfully failed or refused to do so.'' The declaration also alleges that the order was audibly pronounced in the presence of the petitioner.[3]

On January 27, 1969, the petitioner was adjudged in contempt of court and ordered sentenced to the county jail to remain there until such time as he purged himself of contempt by ''complying with said orders.'' The court found that the defendant violated the orders of April 1, 1968, April 22. 1968, and June 18, 1968, and that such violation ''is a continuing contempt.'' The court expressly found that ''the defendant has the ability to compy with said orders and further that the defendant continues to have the ability to comply with said orders.'' The contempt proceedings were not reported.

## DISCUSSION

A trial court when faced with a wilful refusal to obey a court order can take action to punish such disobedience under section 1218 of the Code of Civil Procedure. Section 1218 provides: ''Upon the answer and evidence taken, the court or judge must determine whether the person proceeded against is guilty of the contempt charged, and if it be adjudged that he is guilty of the contempt, a fine may be imposed on him not exceeding five hundred dollars ($500), or he may be imprisoned not exceeding five days, or both; provided, however, that in justice courts the judge may punish by fine or imprisonment or both, such fine not to exceed, in any case, one hundred dollars ($100), and such imprisonment one day; the conviction, specifying particularly the offense, and the judg-

[3]The declaration indicates that ''said order was not personally served on the adverse party. The record indicates that the temporary restraining order of April 1, 1968, was personally served on the petitioner on April 1, 1968. The record further discloses that the petitioner was present in court when the orders of April 22, 1968, and June 18, 1968, were orally pronounced.

ment thereon, must be entered in the docket. No party, who is in contempt of a court order or judgment in a divorce or separate maintenance action, shall be permitted to enforce such order or judgment, by way of execution or otherwise, either in the same action or by way of a separate action, against the other party. This restriction shall not affect nor apply to the enforcement of child support orders.'' Under certain circumstances the court has the power to compel obedience to its orders by imprisoning the contemner until he has complied. Section 1219 of the Code of Civil Procedure provides: ''If the contempt is omission to perform any act, the person may be imprisoned until performance. When the contempt consists in the omission to perform an act which is yet in the power of the person to perform, he may be imprisoned until he have performed it, and in that case the act must be specified in the warrant of commitment.''

Here the trial court attempted to compel performance of the orders of April 1, 1968, April 22, 1968, and June 18, 1968, under section 1219 by imprisoning the petitioner indefinitely until he complies with these orders.

### SUFFICIENCY OF THE DECLARATION

A proceeding for an adjudication for constructive contempt is initiated by the filing of an affidavit or declaration. Such affidavit or declaration must set forth the facts constituting the alleged contempt in order to confer jurisdiction upon the court to exercise its contempt powers (*Warner* v. *Superior Court*, 126 Cal.App.2d 821, 824 [273 P.2d 89]). The accused is entitled to notice of the particular accusation against him (*In re Felthoven*, 75 Cal.App.2d 465, 468-469 [171 P.2d 47]).

The facts essential to jurisdiction for a contempt proceeding are ''(1) the making of the order; (2) knowledge of the order; (3) ability of the respondent to render compliance,[4] (4) wilful disobedience of the order.'' (*Warner* v.

[4]In cases involving a wilful disobedience of a support order it is sufficient for the affidavit or declaration to allege the making of the court order and a refusal to comply where the question of ability to comply with the court's order has already been determined by the court as part of the divorce proceeding and where the affidavit or declaration is filed soon after the order was entered. (*Mery* v. *Superior Court*, 9 Cal.2d 379, 380 [70 P.2d 932]; *In re McCarty*, 154 Cal. 534, 536-538 [98 P. 540].) In this matter the record does not reflect any factual determination based on an evidentiary hearing that the petitioner had the ability to comply with the court's orders prior to the contempt proceedings of January 27, 1969.

*Superior Court,* 126 Cal.App.2d 821, 824 [273 P.2d 89] ; see also *In re Ny,* 201 Cal.App.2d 728, 731 [20 Cal.Rptr. 114].)

On the face of the declaration in this matter sufficient facts were set forth to give the court jurisdiction to punish the petitioner for contempt by imposition of a fine or a definite jail term under section 1218 of the Code of Civil Procedure. The declaration alleges that the petitioner wilfully disobeyed certain court orders pronounced in his presence although he *had* the ability to perform the acts required of him.

The petitioner was given notice of the fact that he faced punishment for contempt under section 1218.

Unfortunately, the trial judge chose not to punish the petitioner for his past violations of specific court orders, but to imprison him to enforce future compliance with these orders. However, section 1219 can only be invoked to compel obedience to a court order where the desired act is "yet in the power of the person to perform." The declaration does not allege that the petitioner has the present ability to comply with the court's orders. Thus, the petitioner had no knowledge that he faced indefinite imprisonment under section 1219 until he heard the judge order the sheriff to keep him in the county jail indefinitely.

A contempt proceeding is quasi-criminal in nature (*Hotaling* v. *Superior Court,* 191 Cal. 501, 504 [217 P. 73, 29 A.L.R. 127] ; *Phillips* v. *Superior Court,* 22 Cal.2d 256, 257 [137 P.2d 838] ; *Freeman* v. *Superior Court,* 44 Cal.2d 533, 538 [282 P.2d 857]). The accused person is entitled to the procedural safeguards available to a person accused of a criminal charge (*City of Culver City* v. *Superior Court,* 38 Cal.2d 535, 541 [241 P.2d 258] ; *Ransom* v. *Superior Court,* 262 Cal. App.2d 271 [68 Cal.Rptr. 507]) including due process. (*In re Shelley,* 197 Cal.App.2d 199, 202 [16 Cal.Rptr. 916].) Due process includes the right to know the exact nature of the charge against the accused so that he can prepare and present his defense. Otherwise he will be taken by surprise by the evidence offered at his trial (*In re Hess,* 45 Cal.2d 171, 175 [288 P.2d 5]).

In this matter the petitioner was placed on notice that he was accused of violating the court's orders at a time when he had the ability to comply. He had no notice that he was facing an accusation that having the present ability to comply he was still wilfully refusing to perform the acts required of him. The party seeking to have a person held in contempt has the burden of proving his ability to comply beyond

a reasonable doubt. (*Bridges* v. *Superior Court*, 14 Cal.2d 464, 465 [94 P. 2d 983], revd. on other grounds by U.S. Sup. Ct., 314 U.S. 252 [86 L.Ed. 192, 62 S.Ct. 190, 159 A.L.R. 1346]; *Oil Workers Intl. Union* v. *Superior Court*, 103 Cal.App.2d 512, 517 [230 P.2d 71].) If the petitioner had been given notice by the declaration that his present ability to comply was in issue he would have had an opportunity in preparing his defense to rely on the weakness of the case against him or to present evidence in order to attempt to raise a reasonable doubt of his present ability to comply. He went to court warned that he faced statutorily circumscribed punishment for past disobedience of the court's orders only to find himself confined indefinitely unless he performed certain acts in the future. ██ Because of the fact that under section 1219 an alleged contemner faces drastic punishment and the possibility of life imprisonment for his failure to obey a court order contempt proceedings must be strictly construed and any uncertainties or ambiguities must be resolved in favor of the accused (see *Butler* v. *Superior Court*, 178 Cal.App.2d 763, 765 [3 Cal.Rptr. 180].) We hold that a trial court acts in excess of its jurisdiction in ordering an alleged contemner to be imprisoned until he complies with the court's orders where the declaration which initiated the contempt proceedings alleges that the contemner had the ability to comply but fails to allege facts showing a present ability to comply with the court's order.

### THE CONTEMPT ORDER

██ In reviewing the contempt order of January 27, 1969 to determine if the trial court had sufficient evidence before it to support the contempt finding, we must look to the declaration of the party seeking the contempt order and the court's records since the contempt proceedings were conducted in the absence of a court reporter.

In the contempt order of January 27, 1969, the trial court found that the petitioner "in violation of the restraining order of April 22, 1968 the petitioner removed the minor child James from the custody of the plaintiff and the jurisdiction of the court, on or about November 7, 1968."

The order of April 22, 1968, restrained the petitioner from removing James from Los Angeles County "without first obtaining a prior court order or the written consent of plaintiff." The declaration does not set forth any facts which would support a finding that prior court approval was not obtained and that the plaintiff did not consent in writing to

the removal of James from Los Angeles County. Thus, the mere removal of James from Los Angeles County does not constitute a violation of the order of April 22, 1968, unless it was done without prior court approval or written consent of the child's mother. Therefore, the declaration does not set forth facts showing a violation of the order of April 22, 1968, since it fails to allege facts showing a lack of court approval or written consent. The burden of proving lack of written consent or court approval was on the party seeking the contempt order.

The contempt order states the petitioner has the present ability to comply with the court's order of April 22, 1968, against the removal of James from Los Angeles County. However, the court also found that James was removed by the petitioner from the custody of the plaintiff and the jurisdiction of the court on or about November 7, 1968. If we combine these two findings we are thus faced with a determination by the court that the petitioner has the present ability to comply with an order not to remove James from Los Angeles County despite the fact that he has already removed James from Los Angeles County. By its contempt order, the court has demanded that the petitioner remain in jail until he purges himself of his contempt of the order not to remove James from his mother's custody. The court did not order the petitioner to be punished for his contempt under section 1218.[5] The trial court did not make any order subsequent to April 22, 1968, requiring the petitioner to return *James* to his mother or to the jurisdiction of the court. Once the petitioner removed the child from the custody of his mother the prohibited act was an accomplished historical fact. There is no way in which the petitioner can now not remove the child on November 7, 1968. It is now impossible for him to comply with the order against removal. There is nothing the petitioner can now do to purge himself of his contempt of the April 22, 1968 order. A bell cannot be unrung although a court orders that it be done. Before section 1219 can be invoked to compel compliance with a valid court order, the contemner must have it within his power to perform the act. To continue to imprison the petitioner for a violation of the April 22, 1968, order

---

[5]We are informed by the return of the order to show cause filed by the sheriff that the petitioner served a total of 11 days in custody as a result of the contempt order. The maximum time he can be required to serve under section 1218 for a violation of the April 22, 1968, order not to remove James would be five days.

insofar as it relates to the child James would require him to spend the rest of his life in jail, since he can never comply with the order. The following language from an early California case aptly points out the dilemma created by the court's contempt order of imprisonment for the removal of James. "The law does not require a vain act to be done. The prisoner may still be liable to fine and imprisonment for disobeying the original order, but he cannot be further restrained of his liberty, under the present warrant, as it is shown that it is now impossible to comply with the order, and his imprisonment would of necessity be perpetual." (*Ex parte Rowe*, 7 Cal. 176, 177.)

It is apparent from a review of this record that the trial court ordered the petitioner imprisoned in order to compel him to return James and Sue to their mother. However, the contempt order and the declaration refer only to the court's orders of April 1, 1968, April 22, 1968, and June 18, 1968. None of these orders require the *return* of James.

■ A trial court has no jurisdiction to order the imprisonment of an alleged contemner until he performs an act which is in his power to perform unless the act was required to be performed by the terms of the original order which he is charged with violating. (*Dewey* v. *Superior Court*, 81 Cal. 64, 67 [22 P. 333]; *Hotaling* v. *Superior Court*, 191 Cal. 501, 508 [217 P. 73, 29 A.L.R. 127].) In the *Dewey* case, the trial court issued a judgment enjoining the defendant from maintaining a certain dam or other obstructions in Mariposa Creek and from maintaining a ditch or canal in any condition which would interfere with the rights of the plaintiff. Some time thereafter contempt proceedings were instituted by the plaintiff. The defendant was adjudged guilty of contempt, fined $150, and was ordered confined in the county jail until all dams and obstructions which would obstruct the flow of the water were removed and until the ditch was filled up to stop any diversion of the creek's water. The trial court found that it was within the power of the contemner to remove the dam and fill up the mouth of the ditch. The Supreme Court vacated the order insofar as it compelled the indefinite confinement of the contemner on the grounds that "the original order did not require him to perform the act which is by this order enjoined upon him, and for the non-performance of which it is now ordered that he be imprisoned." (*Dewey* v. *Superior Court*, 81 Cal. 64, 67 [22 P. 333].) Thus, in *Dewey* the California Supreme Court ruled that a trial court has no jurisdiction to

imprison a defendant for contempt until he removes a dam and a ditch where the original order of the court restrained him from maintaining the dam and the ditch unless the court had also issued a second order requiring him to remove the dam and the ditch.

The contempt order stated that the petitioner had the present ability to perform the acts required of him by the orders of April 1, 1968, April 22, 1968, and June 18, 1968. However, since none of these orders required him to return James there is no finding of a present ability to return James.

In the order to compel the return of James, the trial judge should have issued a new order requiring that the petitioner return James to his mother. If the petitioner then wilfully disobeyed this new order with the present ability to perform the act of returning James, the trial court would then have the jurisdiction to invoke section 1219 to imprison the petitioner until he complies.

The trial court found that the petitioner violated the temporary restraining order of April 1, 1968. However, the order of April 1, 1968, can no longer be invoked to form the basis of a contempt order since it was superseded by the minute order of April 22, 1968, as to the minor child James since both orders dealt with the same subject matter. (The order of April 22, 1968, is also *functus officio* insofar as it concerns the child Sue since the June 18, 1968, order concerns the same subject matter.) (See *Levy* v. *Levy,* 245 Cal.App.2d 341, 349-350 [53 Cal.Rptr. 790].)

The declaration states that the petitioner removed Sue from the southern California area on April 1, 1968, in violation of the temporary restraining order of April 1, 1968. The declaration does not set forth any facts which indicate that the petitioner had notice of the temporary restraining order which was served on him on the same date he is alleged to have removed Sue from southern California. In fact, the declaration states that "said order" was not personally served on the petitioner. A person cannot be found in contempt of a court order of which he had no notice. There are no facts set forth in the declaration or the contempt order which support the conclusion that the petitioner had notice of the temporary restraining order of April 1, 1968, prior to the time Sue was removed from the southern California area.

The trial court found that the petitioner violated the orders of April 22, 1968, and June 18, 1968, which required him to return the child Sue to the custody of her mother. The court

made no finding in the contempt order that the petitioner has had custody of Sue since he was served with an order on April 1, 1968, not to remove her from her mother's custody. The contempt order contains no finding that the petitioner removed Sue from her mother's custody. This omission is significant since the court expressly found that the petitioner had removed James on November 7, 1968.

In the absence of present custody or possession of the child Sue, the petitioner cannot perform the act of returning her to court. (See *In re Ny,* 201 Cal.App.2d 728, 731 [20 Cal. Rptr. 114].) The contempt order does not set forth any facts which would support the conclusion that the petitioner has it within his power to return Sue to her mother in the absence of present custody.[6]

Because contempt proceedings are quasi-criminal in their nature no presumptions can be indulged in to sustain the regularity, validity, or sufficiency of the proceedings in support of the judgment (*In re Circosta,* 219 Cal.App.2d 777, 785 [33 Cal.Rptr. 514]; *In re Mancini,* 215 Cal.App.2d 54, 56 [29 Cal.Rptr. 796]; *In re Ny,* 201 Cal.App.2d 728, 731 [20 Cal.Rptr. 114]) or of the judgment (*Freeman* v. *Superior Court,* 44 Cal.2d 533, 536 [282 P.2d 857]; *In re Battelle,* 207 Cal. 227, 255 [277 P. 725, 65 A.L.R. 1497]).

The record of the court must affirmatively show upon its face the facts upon which jurisdiction depends so that an appellate court can determine if a contempt has been committed (*In re Moulton,* 100 Cal.App.2d 559, 562 [224 P.2d 76]). A judgment of contempt must not only specify the act to be performed, but if the commitment is predicated upon the provisions of section 1219 must also include a finding that such act is within the power of the contemner to perform (*In re Wells,* 29 Cal.2d 200, 202 [173 P.2d 811]).[7]

In this matter, the declaration upon which these contempt proceedings is based alleges that the petitioner *"had*

---

[6] In connection with the lack of a showing of custody and present ability to comply, it should be noted that the temporary restraining order was directed to the petitioner and his father. Also, in the minute order of June 18, 1968, the trial court directed the plaintiff's attorney ''to obtain a certified copy of this document, translate said order, and forward it to defendant's father.'' These references to the petitioner's father cast further doubt on the present ability of the petitioner to comply with the court's orders.

[7] We are informed by the petitioner's briefs that it was the testimony of Catherine Liu at the contempt proceeding that the children ''are now in Formosa.'' If this was the evidence presented to the trial court it is obvious that it is physically impossible for the petitioner to comply with

the ability to comply with each of the aforementioned orders but has wilfully failed or refused to do so.'' (Italics added.) There is no factual allegation in the declaration to support a finding that the petitioner has a present ability to perform the acts demanded by the court's orders.[8] (See *In re Moulton,* 100 Cal.App.2d 559, 563-564 [224 P.2d 76].)

For the reasons enumerated above we find that the trial court acted in excess of its jurisdiction in ordering the indefinite commitment of the petitioner pursuant to section 1219 of the Code of Civil Procedure.

The writ is granted. The order to show cause heretofore issued is discharged. The trial court is ordered to exonerate the cash bail of $5,000 plus the penalty assessment of $2,250 which is now in the custody of the Los Angeles County Clerk and to order that the county clerk return it to the petitioner.

Aiso, J., concurred.

KAUS, P. J.—I concur in the result for all reasons stated, except this: I do not think it is necessary to hold that where a party has violated a prohibitory injunction and the contempt power is used coercively under section 1219 of the Code of Civil Procedure to compel him to undo what he has done, it is essential that the court have first made a mandatory order to that effect. Although *Dewey* v. *Superior Court,* 81 Cal. 64 [22 P. 333] appears to support such a conclusion, I rather suspect that the case is a product of an age in which mandatory injunctions were ill-favored. It seems to me that if a court enjoins a defendant not to dig a ditch and he does dig a ditch, justice does not require a second order that he fill up the ditch, before the court can order him to do so on pain of imprisonment until he does, provided, of course, he has the present ability.

---

the court's order to return Sue while he is in jail in Los Angeles. It should be noted that the proceedings in this matter were not reported. In making this review we cannot, therefore, look to a trancript of the proceedings to learn what evidence was presented to the trial court which might support the findings of fact and conclusions of law.

[8]Where the record shows an ability to comply the fact that compliance cannot occur while the individual is in jail is not a valid attack on a contempt order since ''if the contemnor indicates his willingness in good faith to perform he would be entitled, and will be allowed, to leave jail in order to do so.'' (*City of Vernon* v. *Superior Court,* 38 Cal.2d 509, 519 [241 P.2d 243].)