Filed 7/30/14  Marriage of Lin CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re the Marriage of HELEN LO LIN and FENG-LIN LIN. | |
| HELEN LO LIN,<br><br>    Respondent,<br><br>v.<br><br>FENG-LIN LIN,<br><br>    Appellant. | A138349<br><br>(San Mateo County<br>Super. Ct. No. 111096) |

Feng-Lin Lin (Husband) appeals from a judgment dissolving his marriage to Helen Lo Lin (Wife) and dividing the parties' property. (Fam. Code, § 2010.)[1] He contends the family court erred in (1) sanctioning him for fraudulently encumbering the marital home by awarding the property to Wife and assessing attorney fees; and (2) awarding to Wife a condominium purchased by her parents but held by Husband and Wife in joint title. We shall affirm the judgment.

**Factual Background**

Husband and Wife were married in December 1985 and separated in October 2010 after almost 25 years of marriage. At the time of separation, Husband was 57 years old and Wife was 53 years old. They have two adult children.

---

[1] All further section references are to the Family Code except as indicated.

1

Husband is an auto mechanic who earned roughly $76,000 in 2010. Wife has an M.B.A. in accounting. At the time of trial, she earned about $30,000 yearly. The couple's principal assets are real estate. At the time of separation, three San Mateo properties were held in joint tenancy: the marital home, a rental property and a condominium.

*Marital home*

The house in which the couple lived was initially acquired by Husband and his sisters in 1978, before his marriage. Husband testified that he made a down payment of about $80,000 and financed the remainder. Husband also testified that he made $50,000 in improvements to the property in 1980. In 1989, Husband and Wife, as joint tenants, acquired a one-third interest in the property and, in 1992, received complete ownership. Wife testified that the house was appraised at a "little bit less than $900,000" when it was refinanced in 2009. Husband estimated the fair market value of the house at $835,500. The balance on the mortgage encumbering the home was $410,015.

*Rental property*

The rental property was acquired by the couple in 1997. The tenant's rent does not cover the mortgage and other expenses. Wife testified that the property was appraised at "close to $700,000" when it was refinanced in 2009. Husband estimated the fair market value at $657,000. The mortgage balance was $412,232.

*Condominium*

The couple acquired joint title to a condominium in 1991 but Wife testified that she is a trustee for her parents, who are the beneficial owners. Wife said her parents could not qualify for a loan so the loan and title were put in the name of herself and Husband. Wife's parents rented the property to a tenant for about two years then lived in the condominium themselves until 2008, when they moved back to China. Wife's nephew (her parent's grandson) was living in the condominium at the time of trial. Wife's parents made all payments for the purchase and maintenance of the condominium: the $40,000 down payment, all monthly mortgage payments, property taxes, homeowner association

fees, and homeowner's insurance. Wife's parents paid off the mortgage in 2000 with a $70,000 lump sum payment. Husband estimates the property's fair market value at $302,000.

Husband concedes that he and Wife never "put any money into the purchase" of the property, never lived there, never leased the property or received rent from tenants, and never paid the property taxes or homeowner association dues. In his trial brief, Husband said the property was placed in the names of Husband and Wife "to keep in trust for [Wife's] parents" but also claimed the property was "gifted to the [couple], as evidenced by the deed." Husband testified he was "not sure" if the condominium was given to the couple at the time of its purchase in 1991, when title was placed in their names, but was "pretty sure" the condominium was given to them when the parents paid off the loan in 2000. Husband said he based that belief on a conversation with Wife's father but the conversation was not related and no further evidence of a gift was presented.

*JNC Enterprises*

In addition to their real estate assets, the couple also invested in JNC Enterprises, a Texas real estate development company operated by Wife's cousin. In 2006, the couple invested $900,000 and were promised an 18 percent return in two years.[2] The couple obtained funds for the investment by refinancing the marital home and rental property. The couple lost much of their investment. JNC Enterprises filed for bankruptcy and owes $839,869 on the $900,000 invested.

The couple had difficulties paying their mortgages when JNC Enterprises failed to repay their investment. In 2009, the couple refinanced their properties. They needed cash to pay down the increased loans they had obtained in 2006 and asked family members for assistance. To refinance the couple's residence, Husband's sister, Frances Sue, provided $370,000 and another sister, Feng Wah Tang, provided $120,000. Wife's mother

---

[2] The nature of the investment, whether a loan or ownership interest, is unclear.

provided $50,000. To refinance the couple's rental property, Sue provided $196,000 and Wife's sister, Winnie Luo, provided $80,000.[3]

The nature of these payments – whether gifts or loans – is in dispute. The only contemporaneous writings memorializing these payments are "Gift Letters" signed by the sisters as part of the refinancing process. In the letters, the sisters certify that the funds are gifts and "further certify that there is no repayment of this gift expected or implied." Wife testified that the funds were gifts and, while she felt a "moral obligation" to repay the funds if possible, there was never a promise to repay the funds and "no legal obligation" of repayment. Some amounts were repaid. Wife's mother was repaid in full, Wife's sister was repaid $5,000 and Husband's sister Francis Sue was repaid $70,000. The repayments were made with money received from JNC Enterprises or other businesses operated by Wife's cousin.

Husband's sister, Tang, testified the funds were a loan to be repaid when the couple received money from JNC Enterprises or "little by little" if the investment never paid off. Husband's other sister, Sue, testified that the provided funds were loans to be repaid within two years. Husband also testified that the funds were loans. Husband said, "You borrow money from someone, that mean[s] you automatically owe someone that money." But Husband also acknowledged that he and Wife made no plan to repay the money, intending only to "try [their] best" to do so.

### Procedural History

Wife petitioned for dissolution of marriage on October 22, 2010. Husband received a summons and a copy of the petition. The summons advised that both parties were restrained from transferring or encumbering property without the written consent of the other party or a court order. (§§ 233, subd. (a), 2040, subd. (a)(2).)

In March 2011, Husband unilaterally signed promissory notes secured by deeds of trust encumbering the marital home and rental property. Husband gave the notes to his

---

[3] Husband's trial brief mentions another sister who provided funds to facilitate refinancing but the record is undeveloped on this point.

sisters in exchange for the funds they had provided two years earlier. Husband's sister, Sue, received separate notes for $300,000 and $196,476.20 and his sister, Tang, received a note for $120,000.

A status conference was held in April 2011. Husband represented himself but Wife was represented by recently retained counsel. At the conference, Husband gave Wife's attorney several documents, including a copy of the $196,476.20 deed of trust on the rental property. No other deeds of trust were provided. The proceedings were conducted in chambers and not transcribed. A declaration by Wife's attorney provides little description of the proceeding, stating only that the court commissioner "instructed [Husband] that he should not have recorded the lien."

A settlement conference commenced in June 2011, by which time Husband had retained counsel. A joint settlement conference statement makes no mention of the lien. Settlement discussions were held on multiple days over several months but no resolution was reached.

In advance of trial, Husband's attorney filed a brief listing the principal disputed issues as ownership of the condominium and characterization of the funds provided by Husband's sisters, which Wife claimed were gifts and Husband asserted were "unsecured debt[s]." Wife did not file a trial brief. Wife's parents informed the court that they would file a quiet title action if the court ordered the condominium sold as Husband and Wife's community property. The court agreed to stay any order of that nature to permit resolution of the parents' claim at a later time.

A bench trial was held in March 2012 lasting less than eight hours over the course of two days. At trial, Wife's counsel asked Husband's sister Tang whether she had any writings evidencing the funds she had provided. Tang testified that she had a lien on the marital home and produced a copy of the deed of trust and promissory note for $120,000, which Husband had signed after the dissolution proceedings commenced. Wife and her attorney had not previously known of the lien. Tang testified that she believed "putting a lien on the property was a more enforceable way of getting money" from Wife. During trial, Wife also learned that Husband's sister Frances Sue held a $300,000 promissory

5

note secured by a deed of trust on the martial home. Previously, the only lien that had been disclosed was Sue's deed of trust on the rental property. The court conducted an in-chambers conference with counsel following the sisters' testimony.

At the close of evidence, the court asked the parties to provide written briefs for their closing arguments. The court noted that counsel had "some research to do." Husband's attorney asked if the briefs should discuss "the issue with regard to the matter we discussed in chambers?" Wife's attorney asked if he meant the "proposed division" and Husband's counsel said, "No, with regard to the ATROs" or automatic temporary restraining orders. The court replied, "I don't think so. There's been nothing filed in that regard. It should be strictly with regard to the proposed division." Wife's attorney said, "Right" and Husband's attorney said, "Okay. Just what we've litigated here." The court replied, "Exactly." The parties did not request a statement of decision. (Code Civ. Proc., § 632.)

Wife filed her brief in June 2012. Wife argued that the funds obtained from Husband's sisters were gifts or, if loans, were "payable only upon the condition precedent of the parties receiving a return on their investment." Wife argued that Husband violated the restraining order and his fiduciary duties by encumbering the marital home and rental property during pendency of the dissolution action. She maintained that Husband's violation was fraudulent and, under section 1101, subdivision (h), warranted an award to her of 100 percent of the wrongfully encumbered marital home. Wife also claimed entitlement to the rental property since it was wrongfully encumbered but stated she was willing to have the entire rental property awarded to Husband if she received the condominium. Wife argued that the condominium was held in the parties' names as a constructive trust for the benefit of her parents and she should receive the condominium "so that she may effectuate the intent of the parties to hold the condo in trust" but, in the alternative, asked to be awarded the condominium "as an offset" for surrendering her interest in the rental property to Husband. Wife also requested attorney fees as a sanction for Husband's misconduct. (§ 271.)

6

Husband filed his brief five months later in November 2012. He asked the court to characterize the funds received from the parties' sisters as community debts to be divided equally. He admitted executing liens on the properties in favor of his sisters but denied his acts were "a knowing and/or willful violation" of the restraining order. Husband maintained that the liens were "a non-issue" because "[t]heir presence has had no bearing on the manner in which this case has been conducted" and he was willing "to remedy the situation by reconveying the properties back to the community in their entirety." Husband also interpreted the court's request for briefing "strictly with regard to the proposed division" to preclude all forms of sanctions, including an unequal property division. As to the real property, Husband argued the condominium must be characterized as community property subject to division because it was acquired in joint title during the parties' marriage. He asked that the marital home be awarded to him and the rental property to Wife, with an equalizing payment from Husband to Wife for the difference in value between the two properties.

The court filed its property division order in December 2012. The court found that Husband's unilateral execution of the three deeds of trust impaired Wife's interest in the community estate, in breach of his fiduciary duties under sections 1101 and 1102, and that his acts were fraudulent as defined in Civil Code section 3294, subdivision (a)(3). The court also found that Husband's conduct violated the automatic temporary restraining order. (§ 2040, subd. (a)(2).) The court ruled that Husband's misconduct warranted an unequal division of property and awarded Wife 100 percent of the marital home. (§ 1101, subd. (h).) The court also awarded Wife the condominium and Husband the rental property, without any specification of reasons. The court reserved jurisdiction to quiet title and cancel the deeds of trust.

In its order, the court did not state whether the funds provided by the couple's sisters were loans or gifts but ruled that that "[a]ny and all debt" owed to Wife's sister was assigned to Wife and "[a]ny and all debt" owed to Husband's sisters was assigned to Husband "due to" his violation of the restraining order and breach of fiduciary duties. Husband was awarded any funds received from the JNC Enterprises investment beyond

7

the first $150,000, which was to be divided equally. The court divided other assets equally and awarded Wife spousal support. Finally, the court awarded Wife $14,872 in attorney fees and costs as a sanction against Husband for frustrating settlement of the litigation (§ 271, subd. (a)), noting his violation of the restraining order (§ 2040, subd. (a)(2)) and breach of fiduciary duties (§§ 1101, 1102).

Husband filed a motion for reconsideration. (Code Civ. Proc., § 1008.) Husband asserted that he did not fully address the issue of sanctions in his closing trial brief because he understood the court's request for briefing "strictly with regard to the proposed division" to indicate that no sanctions were under consideration. He argued further that sanctions were, in any event, unwarranted because his violation of the restraining order was not knowing or willful. Husband said his ability to read and understand the restraining order when he was unrepresented by counsel was "severely compromised" by his lack of English proficiency. He also argued that his violation of the restraining order did not dispossess Wife of the properties or otherwise impair her interests.

Wife opposed the motion. Wife's attorney submitted a declaration addressing the court's briefing instructions. Counsel said it was her understanding, from discussions in court and chambers, that the court intended to consider an unequal division of property as a remedy for Husband's violation of the restraining order and limited the parties only from addressing contempt. Wife declared that Husband is proficient in English, noting that he has lived in the United States for 40 years and uses English regularly in professional and private capacities. Wife argued that his creation of promissory notes and notarized deeds of trust shows sophistication that belies his claim of ignorance. She also maintained that a court commissioner put Husband on notice of the wrongfulness of the liens when Husband revealed one of them at the April 2011 status conference, yet Husband failed to expunge the liens after retaining counsel or at any time before the March 2012 trial.

At the hearing, Husband's counsel argued that Husband placed the liens on the properties out of "panic" when Wife "took the position that these family loans were

8

gifts." Counsel maintained that the liens had no detrimental effect on Wife's interests or the course of the dissolution action. Counsel also informed the court that Husband recently removed the liens and, at the hearing, provided Wife's attorney with copies of the reconveyances.

Wife's attorney argued that the liens had jeopardized Wife's interests and may have impeded settlement. The attorney said, "Had those liens not existed, [Husband] may have been more willing to allow for some of the proposals we had made going back and forth as to how the three properties would have been assigned."

The court denied Husband's reconsideration motion, finding its original order "fair based on the circumstances and the facts." The court said, "I think it was clear [Husband] was intentionally violating the automatic restraining orders. There's no other conclusion that the court could draw."

The court filed its judgment of dissolution and property division order on August 23, 2013. Husband filed a timely notice of appeal.

## Discussion

### 1. *Statutory Background*

In every dissolution action, standard temporary restraining orders take effect automatically upon issuance and service of the summons. (§§ 233, subd. (a), 2040, subd. (a).) Among other restrictions, parties to a dissolution action are barred from transferring or encumbering any property without the other party's written consent or a court order, with limited exceptions for certain types of expenses. (§ 2040, subd. (a)(2).)[4] A spouse also has fiduciary duties in the joint management and control of community property that

---

[4] Section 2040, subdivision (a)(2) provides, in relevant part, that the summons shall contain an order: "Restraining both parties from transferring, encumbering, hypothecating, concealing, or in any way disposing of any property, real or personal, whether community, quasi-community, or separate, without the written consent of the other party or an order of the court, except in the usual course of business or for the necessities of life, and requiring each party to notify the other party of any proposed extraordinary expenditures at least five business days before incurring those expenditures and to account to the court for all extraordinary expenditures made after service of the summons on that party."

limits disposition of property during marriage, regardless of whether a dissolution action is pending. (§ 1100, subd. (e).) As relevant here, both spouses must join in an encumbrance of community real property. (§ 1102, subd. (a); see *Droeger v. Friedman, Sloan & Ross* (1991) 54 Cal.3d 26, 29-30 [noncompliant encumbrance is voidable by nonconsenting spouse].)

Willful disobedience of a property restraining order may be punished in a contempt proceeding. (Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group) ¶ 18:129; see *Goold v. Superior Court* (2006) 145 Cal.App.4th 1 [affirming contempt order]; see also *In re Liu* (1969) 273 Cal.App.2d 135, 140 [stating contempt standards].) A violation of a property restraining order may also result in statutory remedies for breach of fiduciary duty. (*In re Marriage of McTiernan & Dubrow* (2005) 133 Cal.App.4th 1090, 1102-1103; Hogoboom & King, Cal. Practice Guide: Family Law, *supra,* ¶¶ 5:57.5, 8:612 et seq.)

"A spouse has a claim against the other spouse for any breach of fiduciary duty that results in impairment to the claimant spouse's present undivided one-half interest in the community estate, including, but not limited to, a single transaction or a pattern or series of transactions, which transaction or transactions have caused or will cause a detrimental impact to the claimant spouse's undivided one-half interest in the community estate." (§ 1101, subd. (a).)

Remedies for breach may include an award to the claimant spouse of 50 percent or 100 percent of the impacted community asset, depending on the breaching spouse's culpability. (§ 1101, subds. (g), (h).) "Remedies for breach of the fiduciary duty by one spouse . . . shall include, but not be limited to, an award to the other spouse of 50 percent, or an amount equal to 50 percent, of any asset undisclosed or transferred in breach of the fiduciary duty plus attorney fees and court costs. . . ." (§ 1101, subd. (g).) "Remedies for breach of the fiduciary duty by one spouse . . . when the breach falls within the ambit of Section 3294 of the Civil Code shall include, but not be limited to, 100 percent of any asset undisclosed or transferred in breach of the fiduciary duty." (§ 1101, subd. (h).)

10

Conduct falls within the ambit of section 3294 of the Civil Code if committed with oppression, fraud or malice -- the standard for an award of punitive damages. Fraud, which is relevant here, "means an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury." (Civ. Code, § 3294, subd. (c)(3).)

2. *Remedies imposed under section 1101 are not punitive damages and are not subject to review under standards applicable to punitive damages.*

Husband contends that in awarding Wife 100 percent of the marital home the court awarded punitive damages which are excessive under constitutional standards. Husband misconstrues the nature of the remedy that the court imposed. Remedies imposed under section 1101 for breach of fiduciary duty are not punitive damages. The award to a spouse of 50 percent of an undisclosed or transferred asset provides restitution for the loss. (§ 1101, subd. (g); *In re Marriage of McTiernan & Dubrow*, *supra*, 123 Cal.App.4th 1090, 1103.) The award of 100 percent of the asset for a fraudulent, oppressive or malicious breach of fiduciary duty is a civil sanction or penalty; though similar in nature and effect, it is not an assessment of punitive damages. (§ 1101, subd. (h); see *In re Marriage of Rossi* (2001) 90 Cal.App.4th 34, 42-43 [referring to remedy as a "severe sanction" and "penalty"].)

As noted above, a spouse may be awarded the full value of a community asset impacted by the other spouse's breach of fiduciary duty if "the breach falls within the ambit of Section 3294 of the Civil Code." (§ 1101, subd. (h).) The reference in the Family Code to Civil Code section 3294 governing punitive damages incorporates the standard of misconduct (fraud, oppression or malice) for the purpose of imposing sanctions under section 1101; it does not convert the Family Code sanction into punitive damages as Husband asserts. The family court is authorized to impose penalties and sanctions but has no power to award punitive damages. Tort remedies do not apply in dissolution actions. (*Rubenstein v. Rubenstein* (2000) 81 Cal.App.4th 1131, 1146-1147.)

11

The legislative history of section 1101 is not to the contrary.[5] It is true, as Husband notes, that section 1101's value-of-the-asset penalty was referred to as "punitive damages" in an assembly committee report (Assem. Com. on Judiciary, Rep. on Sen. Bill No. 716 (1991-1992 Reg. Sess.) Aug. 21, 1991, p. 1) but that same report also uses the term "penalty" (*id*. at p. 11). Neither reference is determinative of the proper construction of section 1101, subdivision (h), which is best determined from the language of the statute and the function it serves in family law as a whole. Read in context, the value-of-the-asset remedy is a civil sanction meant to deter abuse of community property assets. "Through the enactment of the section 1101 value-of-the-asset remedy, the Legislature has in effect altered the one-half interest community property formula in the event a spouse violates his or her duty to preserve the other spouse's one-half right to the property, by awarding the aggrieved spouse more than his or her one-half interest." (*In re Marriage of Simmons* (2013) 215 Cal.App.4th 584, 593-594.)

Standards used to assess whether the amount of punitive damages awarded in a tort case are constitutionally excessive are therefore inapplicable and Husband's reliance upon them is misplaced. (*State Farm Mut. Auto. Ins. Co. v. Campbell* (2003) 538 U.S. 408, 418; *Roby v. McKesson Corp.* (2009) 47 Cal.4th 686, 712; see *In re Marriage of Feldman* (2007) 153 Cal.App.4th 1470, 1478, fn. 7 [rejecting argument that Family Code sanctions are reviewable as punitive damages].) Nevertheless, due process rights are implicated here. "Courts have consistently assumed that 'oppressive' or 'unreasonable' statutory penalties may be invalidated as violative of due process." (*Hale v. Morgan* (1978) 22 Cal.3d 388, 399.) "Courts examine whether a penalty provision, on its face or as applied in a specific case, imposes a penalty that exceeds these limits." (*Home Depot U.S.A., Inc. v. Superior Court* (2010) 191 Cal.App.4th 210, 225.) Husband does not make a facial challenge but does assail the reasonableness of the penalty as applied to him. We conclude, for reasons discussed below, that the penalty is supported by the evidence and not constitutionally excessive.

---

[5] Husband's request for judicial notice of legislative history materials is granted.

3. *Substantial evidence supports the court's finding that Husband intentionally violated the restraining order and fraudulently impaired Wife's interest in the community estate, thus warranting an unequal property division and award of attorney fees.*

"A judgment or order of a lower court is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness." (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133.) When there is no statement of decision, "the reviewing court must infer, following a bench trial, that the trial court impliedly made every factual finding necessary to support its decision." (*Fladeboe v. American Isuzu Motors, Inc.* (2007) 150 Cal.App.4th 42, 48.) We review the factual findings of the family court, express or implied, for "substantial evidence, examining the evidence in the light most favorable to the prevailing party." (*In re Marriage of Rossi, supra,* 90 Cal.App.4th at p. 40.)

Substantial evidence supports the family court's finding that Husband intentionally violated the restraining order and fraudulently executed promissory notes and deeds of trust encumbering community real property. Husband admitted at trial that he received a copy of the summons and petition for dissolution. The summons, served in November 2010, contained explicit notice of the mutual restraining order enjoining the parties from "transferring, encumbering, hypothecating, concealing, or in any way disposing of any property, real or personal, whether community, quasi-community, or separate, without the written consent of the other party or an order of the court . . . ." (§ 2040, subd. (a)(2).) Apart from the restraining order, family law dictates that both spouses "must join in executing any instrument" in which community real property is sold, conveyed or encumbered. (§ 1102, subd. (a).)

Husband violated these restrictions in March 2011 by unilaterally executing three separate promissory notes secured by deeds of trust in favor of his sisters. The encumbrances were substantial, totaling $616,476.20. The deeds of trust on the marital home alone totaled $420,000 and roughly equaled the equity value of the property. One of the sisters, Tang, testified that Husband offered to sign the note secured by the marital home and she accepted. Tang understood that "putting a lien on the property was a more

13

enforceable way of getting money from [Wife]." A month after encumbering the property, Husband disclosed the existence of one of the liens to Wife's attorney at an April 2011 status conference and the court commissioner told Husband "he should not have recorded the lien." Husband did not reveal the other liens and did nothing to expunge them through the time of trial in March 2012, almost a year later. Husband released the liens only after the court issued its order imposing sanctions. On this evidence, the family court could conclude that Husband made "an intentional misrepresentation, deceit, or concealment of a material fact" with the intention of "depriving a person of property or legal rights or otherwise causing injury." (Civ. Code, § 3294, subd. (c)(3).)

Comparable misconduct has been held to warrant an award of 100 percent of the community asset to the aggrieved party under section 1101, subdivision (h). A wife's intentional concealment of lottery winnings resulted in the court awarding all the winnings to her husband. (*In re Marriage of Rossi, supra,* 90 Cal.App.4th at pp. 40-42.) In *Rossi*, the wife pooled money with coworkers to buy lottery tickets and hit the jackpot. (*Id.* at p. 36.) Her share of the winnings was over $1.3 million. (*Ibid.*) Within weeks, the wife filed for dissolution of marriage and did not list the lottery winnings as either community or separate property. (*Id.* at p. 37.) The husband did not learn of the omitted asset until after judgment of dissolution, at which time he moved to set aside the judgment and sought award of 100 percent of the lottery winnings. (*Id.* at p. 38.) The family court determined that the wife fraudulently concealed the lottery winnings, which was a community asset, and awarded the entire amount to the husband. (*Id.* at p. 39, citing § 1101, subd. (h).) The order was affirmed on appeal, with the court noting that "[t]he statutory scheme for dissolution depends on the parties' full disclosure of all assets so they may be taken into account by the trial court. A failure to make such disclosure is properly subject to the severe sanction of section 1101, subdivision (h)." (*Rossi, supra,* at p. 42.)

In *In re Marriage of Murray* (2002) 101 Cal.App.4th 581, section 1101, subdivision (h) was also held to authorize the award of an entire asset to a defrauded

spouse. In *Murray*¸ the husband permitted a default to be taken against him by his girlfriend in an action to enforce promissory notes he signed, which enabled the girlfriend to attach the proceeds from the sale of the marital home. (*Id.* at p. 589.) The family court found that the husband and his girlfriend committed fraud and awarded the entire $82,000 obtained from sale of the house to the wife. (*Id.* at pp. 589, 592.) The order was affirmed on appeal. (*Id.* at p. 604.)

Apart from claims of insufficient evidence, which we reject, Husband also contends that he did not receive adequate notice and an opportunity to be heard on the subject of sanctions. The contention is not supported by the record. Husband's encumbrance of the community property was revealed at trial, during his sister Tang's testimony. Once revealed, both sisters were questioned about the matter. The encumbrances were clearly a subject of concern at trial and appear to have been the subject of an in-chambers conference that followed the sisters' testimony. Husband testified after his sisters and had an opportunity to explain his conduct but said nothing on the subject. When Wife's attorney asked Husband about documents memorializing the sisters' provision of funds, Husband was vague and nonresponsive. At the close of evidence, the court asked the parties to present their closing arguments in writing and the parties agreed to that procedure.

Wife's brief included a request for sanctions under sections 271 and 1101, described the evidence supporting a finding of misconduct, and specifically sought award of the marital home, assignment of any debts owed to Husband's sister to him alone, and an award of attorney fees. Husband had almost five months to file his responsive brief. Husband merely dismissed the sanctions request as a "non-issue" because he was willing to release the liens. Husband also said he believed Wife's sanctions request was outside the scope of the briefing requested by the court.

Although Husband may have misunderstood the court's intention to consider sanctions in the form of an unequal property division and fees, but not contempt, he had a further opportunity to address the issue of sanctions on his motion for reconsideration. He chose to present little evidence on the matter. Husband did not file a declaration and

15

relied entirely on the declaration and argument of counsel. Counsel argued that Husband's violation of the restraining order was not knowing and willful because Husband lacked English proficiency (a contested point), which compromised Husband's ability to understand the restraining order. The record clearly demonstrates that Husband had adequate notice of the request for sanctions under sections 271 and 1101 and was given an opportunity to be heard on the subject.

We also find no abuse of discretion in the amount of fees awarded. "The purpose of section 271 is ' "to promote settlement and to encourage cooperation which will reduce the cost of litigation." [Citation.]' (*Parker v. Harbert* (2012) 212 Cal.App.4th 1172, 1177.) " 'Family law litigants who flout that policy by engaging in conduct that increases litigation costs are subject to the imposition of attorneys' fees and costs as a sanction.' " (*Ibid.*) The court awarded fees and costs of $14,872, which was the sum incurred through trial according to a declaration filed by Wife's attorney. Husband argues that the court should not have awarded fees and costs incurred for the entire litigation and, in doing so, imposed an unreasonable financial burden upon him. Husband failed to raise a timely objection to the amount of fees and thus has forfeited the issue on appeal. (*In re Marriage of Feldman, supra,* 153 Cal.App.4th at pp. 1495-1496.) In any event, the court did not abuse its discretion in impliedly concluding that Husband's misconduct impacted the proceedings as a whole by necessitating a trial that may have been avoided had Husband not secretly encumbered community property. As for Husband's ability to pay, Husband earned about $76,000 in 2010 and received an equal division of a number of assets. He was also awarded the couple's rental property, which the court characterized as "substantial real property." Husband has failed to demonstrate an inability to pay $14,872.

4. *Husband has failed to demonstrate a basis for overturning the court's award of the condominium to Wife.*

The court awarded the condominium to Wife "as her sole and separate property" with no specification of reasons. The condominium was acquired by the couple as joint tenants during marriage, although Wife testified that her parents paid for the property and

16

are the beneficial owners. Husband argues that the parents' claims must be separately adjudicated and, for purposes of the dissolution action, the property characterized as community property. Husband notes that "property acquired by the parties during marriage in joint form . . . is presumed to be community property," rebuttable only with documentary proof to the contrary. (§ 2581.)

The parties assume the family court awarded the condominium to Wife by crediting her claim that she held the property in trust for her parents and debate whether the court erred in doing so. The disagreement is based on false assumptions. The court did not award the condominium to Wife in trust for her parents. It awarded the condominium to Wife "as her sole and separate property" while awarding the rental property to Husband "as his sole and separate property." It appears the court deemed both the condominium and the rental property to be community property and, given their relatively equal value, awarded one property to each spouse. This specific division of property – the condominium to Wife and the rental property to Husband – was proposed by Wife. Wife argued in her trial brief that she should receive the condominium in trust for her parents but, in the alternative, asked to be awarded the condominium "as an offset for the portion of the parties' rental property" she would otherwise be awarded. Wife was entitled to 50 percent of the rental property because it was acquired during marriage and was potentially entitled to 100 percent of the property because Husband fraudulently encumbered it. (§ 1101, subd. (h).) The court seems to have adopted Wife's request and awarded the condominium to her as an offset for her interest in the rental property. It is difficult to ascertain why the court awarded Husband the rental property (which was admittedly community property) if not as an offset for its award of the condominium to Wife. When, as here, there is no statement of decision, "the reviewing court must infer, following a bench trial, that the trial court impliedly made every factual finding necessary to support its decision." (*Fladeboe v. American Isuzu Motors, Inc., supra,* 150 Cal.App.4th at p. 48.) Absent a demonstration of error, we presume the order is correct. (*In re Marriage of Arceneaux, supra,* 51 Cal.3d at p. 1133.) We therefore presume the

17

court found the jointly titled condominium to be community property but awarded it to Wife as an offset for awarding the comparably valued rental property to Husband.

**Disposition**

The judgment is affirmed.


_____
Pollak, J.


We concur:


_____
McGuiness, P. J.


_____
Siggins, J.