[Civ. No. 23984. First Dist., Div. One. Jan. 27, 1967.]

LEON H. SORELL, Petitioner, v. THE SUPERIOR COURT OF THE CITY AND COUNTY OF SAN FRANCISCO, Respondent; CHARLES W. KIESER, Real party in Interest.

Leon H. Sorell, in pro. per., for Petitioner.

No appearance for Respondent.

Charles W. Kieser, in pro. per., for Real Party in Interest.

ELKINGTON, J.—By this proceeding in certiorari, petitioner, a practicing attorney, seeks annulment of certain orders of the respondent superior court, dated September 2, 1966, and September 21, 1966, respectively. These orders adjudge petitioner to be in contempt of that court and that he be jailed therefor for five days.

Charles W. Kieser, the real party in interest, also an attorney, represented Ann Sorell, wife of petitioner in a divorce action. On motion of Ann Sorell, following a hearing, the court on December 2, 1963, made an order for temporary support and attorney fees. In this order petitioner here was, among other things, ordered to "pay to Charles W. Kieser, attorney for plaintiff herein, the further sum of $100.00 on account of counsel fees, in addition to the $200.00 ordered paid on July 18, 1963." Admittedly no part of these sums have been paid.

In July 1966 the real party in interest commenced contempt proceedings against petitioner for nonpayment of the sums so ordered paid. A "Notice of Motion re Contempt" was served and filed together with a supporting declaration made under

penalty of perjury. This declaration in its material portions alleges: ''That defendant has not paid any part or portion of said fees and costs due, [that] defendant wilfully refuses to pay said amount [as] ordered by the above-entitled court; That from December 2, 1963 to date, defendant has received sums of money as and for attorney's fees in various legal cases he has handled . . . ; That defendant has announced his intention not to pay said fees, on more than one occasion.''

Petitioner (defendant below) offered no counterdeclaration or affidavit. At the hearing neither side produced evidence, and argument was confined to legal issues. During the proceedings petitioner admitted that he had said in the presence and hearing of the court that he had no intention of paying any money to Mr. Kieser, regardless of his ability, and that under no circumstances would he pay one cent.

In the ensuing orders the court found that petitioner *"has had* the ability to comply with the Judgment and Order of this Court made 2nd day of December 1963, together with accrued interest,'' totaling $393.50. (Italics added.)

Petitioner's contentions are two. First, he states that Mr. Kieser, not having been a party to the divorce action in which the order in question was made, has no standing to enforce that order by contempt proceedings. He appears to be in error.

Section 137.5 of the Civil Code has since 1937 provided for payment of such attorney fees directly to the attorney concerned. Until 1951 that section had also provided that such an attorney fee order could be enforced only by way of execution. In 1951 section 137.5 of the Civil Code was amended to refer to the enforcement provision of section 137.3 of the Civil Code which allows enforcement ''by the court by execution or by such order or orders as, in its discretion, it may from time to time deem necessary.'' This language includes the contempt power. (See *Miller* v. *Superior Court* (1937) 9 Cal.2d 733 [72 P.2d 868]; 3 Witkin, Summary of Cal. Law (1960) Husband and Wife, § 96, pp. 2645, 2646; § 104, p. 2651.)

It is true, generally, that a motion for attorney fees cannot be made by one not a party to the action. (*Marshank* v. *Superior Court* (1960) 180 Cal.App.2d 602, 605 [4 Cal.Rptr. 593].) An attorney to whom an award of fees has been ordered paid, however, stands in a unique position. While not for other purposes a party to the action, he may move the court to enforce the award made payable to him. (*Weil* v.

*Weil* (1950) 100 Cal.App.2d 472, 473 [224 P.2d 471].) The scope of this power is more precisely spelled out in the case of *Shapiro* v. *Cahill* (219 Cal.App.2d 772, 774 [33 Cal.Rptr. 601]) where it is pointed out that an attorney cannot make a motion for the award of counsel fees on his own behalf, but must do so on behalf of his client (as was done here), yet, once the award has been properly made on behalf of the party to the action, the attorney may make a motion on his own behalf to enforce the award. Without this rule, the purpose of the statute allowing an award to be made payable directly to the attorney would be utterly defeated.

Petitioner next contends, there being no showing of his present ability (in 1966) to make payment as ordered, that the court lacked jurisdiction to make the questioned orders.

■ In a proceeding for the punishment of constructive contempt, i.e., one committed out of the presence of the court, the affidavit or, as here, the declaration of the complaining party constitutes the basis of the judicial action. (*Freeman* v. *Superior Court* (1955) 44 Cal.2d 533, 536 [282 P.2d 857]; *Hotaling* v. *Superior Court* (1923) 191 Cal. 501, 505 [217 P. 73, 29 A.L.R. 127]; *Uhler* v. *Superior Court* (1953) 117 Cal.App.2d 147, 151 [255 P.2d 29, 256 P.2d 90]; *Ex parte Von Gerzabek* (1923) 63 Cal.App. 657, 660-661 [219 P. 479].) If the affidavit does not recite all the jurisdictional facts by showing a contempt of court on its face, the court is without jurisdiction, and the order of contempt is void. (See, e.g., *Phillips* v. *Superior Court* (1943) 22 Cal.2d 256, 257 [137 P.2d 838]; *Berger* v. *Superior Court* (1917) 175 Cal. 719, 720 [167 P. 143, 15 A.L.R. 373]; *Warner* v. *Superior Court* (1954) 126 Cal.App.2d 821, 824 [273 P.2d 89]; *In re Ny* (1962) 201 Cal.App.2d 728, 731 [20 Cal.Rptr. 114].)

■ In a proceeding to punish for contempt, it is generally not necessary that the complainant allege that the contemner has the ability to comply with the order. (*In re McCarty* (1908) 154 Cal. 534, 537 [98 P. 540]; *In re Rasmussen* (1922) 56 Cal.App. 368, 371 [205 P. 72]; *Ex parte Von Gerzabek, supra,* 63 Cal.App. 657, 661; *In re Risner* (1945) 67 Cal.App. 2d 806, 809-810 [155 P.2d 667].)

In the *McCarty* case, the court stated that it is not necessary for the wife to allege her spouse's ability to comply with the original order granting alimony. "The court had originally found that he had such ability, and the only jurisdictional facts required to be stated in the affidavit were the making of the order and disobedience to it by refusal to

pay.'' (154 Cal. 534, 537-538.) The contemner has an opportunity at the contempt hearing to offer any legitimate excuse for noncompliance with the order, such as financial inability to comply. ''He is in the best position to show why for any reason he has not obeyed the order, and it is his duty to do so as a matter of defense.'' (*Id.* at p. 537.)

Petitioner, however, urges *Mery* v. *Superior Court* (1937) 9 Cal.2d 379 [70 P.2d 932], and *In re Brown* (1955) 136 Cal. App.2d 40 [288 P.2d 27], as authority that where three years or more[1] intervene between the making of the order and the contempt proceedings, the rule announced in *McCarty, supra,* 154 Cal. 534, 537, does not apply.

In *Mery, supra,* the alleged contemner had over a period of years paid $8,860, finally becoming delinquent in the amount of $2,000. In *Brown, supra,* he had met payments of $350 per month for 33 months following the court order, after which he missed payments totaling $800. In each of these cases the alleged contempt occurred years after the court's determination of ability to pay. It is reasonable in such cases to require a new finding of ability to pay. In the case before us we have quite a different situation. Here the court on December 2, 1963, determined that petitioner then had the ability to pay the amount ordered. Petitioner did not pay, thereby forthwith placing himself in contempt by wilful disobedience of a lawful order of the court. (Code Civ. Proc., § 1209, subd. 5.) In the contempt proceedings below (1966) the court found that petitioner ''has had the ability to comply'' with the earlier order. This finding is fully supported.

Petitioner's contention seems to be that even though he had previously had the ability to comply with the lower court's order, and did not, there must nevertheless be an affirmative showing by respondent that petitioner now has such a present ability. We do not believe this to be the law.[2]

In *In re Risner, supra,* 67 Cal.App.2d 806, Nelly Risner, in a divorce action, was ordered to pay her husband $225 as and for alimony and attorney fees, the court having (as here) found a present ability (at the time of the making of the order) to pay. Nelly delayed payment, and finally paid the amount involved to an attaching creditor of her husband.

[1]Here the interval was approximately 2½ years.

[2]This case must be distinguished from those where a party is ordered jailed until such time as he complies with the court's order. Obviously a present ability to comply is there required.

Contempt proceedings were instituted by the husband and Nelly was found to be in contempt. Her commitment order recited, in its material parts (p. 808) as follows: " 'That the plaintiff did not, forthwith, or at any time after the order . . . was made . . . pay the said sum of $225.00 to said defendant . . . that said plaintiff from the 6th day of November, 1944, when said order was made . . . until . . . said garnishment was served upon plaintiff, had the ability to comply with said order . . . but that said plaintiff did wilfully fail, neglect and refuse to pay said sum of $225.00, or any part thereof to the defendant, . . . and that because of plaintiff's said conduct and wilful disobedience of said order . . . plaintiff is adjudged guilty of contempt of this Court, and is hereby sentenced to five (5) days in the County Jail; . . .' "

In *Risner, supra,* (67 Cal.App.2d 806), no showing of present ability to comply at the time of the contempt hearing was made. The allegation and the proof was to the effect that Nelly had previously had such ability. Accordingly the appellate court there determined (p. 811): "The record in the instant proceeding does not disclose a lack of jurisdiction in the trial court to make the order of commitment adjudging petitioner guilty of contempt."

The principle followed in *Risner, supra,* seems to be the general rule. Volume 17, Corpus Juris Secundum, in its article on Contempt, at page 49, states: ". . . if the order could have been obeyed when made, the party is in contempt, although at the time of the contempt proceedings he could not comply." Volume 27B of the same work in the article "Divorce," page 101, sets forth: "Ability to comply at the time of the act of disobedience, and not at the time of the imposition of sentence, is the test of whether a refusal to comply with a decree for the payment of alimony constitutes contempt; . . ."

A leading case on this point is *In re Clifts Estate* (1945) 108 Utah 336, 340 [159 P.2d 872], in which the Supreme Court of Utah stated: " '. . . the inability of the defendant, without fault on his part, to render obedience to the judgment would be a complete defense to the charge of contempt for failure to comply with such judgment, . . .' However, this does not necessarily require ability to comply with the order at the time of the commitment for contempt. Conceivably a person might, while he had the ability to comply therewith, deliberately fail to obey the court's order, and then after his

contempt was complete lose the ability to perform, but he would still be guilty of a past contempt. . . . If he deliberately rendered himself unable to comply with the court's order, or even if he were deprived of the ability to perform by events which were beyond his control he would still not be thereby purged of his past contempt. On the other hand, . . . where it is yet within his power to perform, the court may for the purpose of compelling obedience to its order imprison him until he complies therewith. [Citations.]'' (See also *McAtee* v. *McAtee* (1904) 116 Ill.App. 511; *Tredway* v. *Van Wagenen* (1894) 91 Iowa 556 [60 N.W. 130]; *Brown* v. *Cook* (1953) 123 Utah 505 [260 P.2d 544]; *Donnels* v. *Bouillion* (1928) 165 La. 145 [115 So. 439]; *Wenger* v. *Wenger* (1937) 200 Minn. 436 [274 N.W. 517]; *Lewis* v. *Lewis* (1952) 213 Miss. 434 [57 So.2d 163].)

▉ Accordingly the issue here is not as petitioner contends, whether he has the present ability (in 1966) to pay the amounts ordered paid in 1963 at which time the court found an ability to pay. Instead the question is: Did petitioner, having the ability to pay (at least in 1963) wilfully fail to comply with the court's order? From the record before us it is clear that he did. Further proof of a present ability to pay would seem to be unnecessary.

For the reasons stated the orders are affirmed.

Molinari, P. J., and Sims, J., concurred.

A petition for a rehearing was denied February 17, 1967. On February 24, 1967, the judgment was modified to read as printed above.