[No. G003512. Fourth Dist., Div. Three. Oct. 31, 1989.]

In re PHILLIP WILLIAM FEIOCK on Habeas Corpus.

**COUNSEL**

Richard Schwartzberg, under appointment by the Court of Appeal, Ronald Y. Butler, Public Defender, Frank Scanlon, Assistant Public Defender, Richard Aronson, Richard Schwartzberg and Mark Licker, Deputy Public Defenders, for Petitioner.

No appearance for Respondent.

Cecil Hicks, District Attorney, Michael R. Capizzi, Assistant District Attorney, Maurice L. Evans, Bruce M. Patterson, David L. Himelson, William W. Bedsworth, Eric W. Snethen and E. Thomas Dunn, Jr., Deputy District Attorneys, for Real Party in Interest.

## OPINION

**WALLIN, J.**—We originally granted the petition for a writ in this case. (*In re Feiock* (1986) 180 Cal.App.3d 649 [225 Cal.Rptr. 748].) It returns to us by way of writ of certiorari from the United States Supreme Court vacating the judgment and remanding for further proceedings. (*Hicks* v. *Feiock* (1988) 485 U.S. 624 [99 L.Ed.2d 721, 108 S.Ct. 1423].) Based upon new arguments, we deny the writ of habeas corpus.

### I

The underlying facts remain the same. We reproduce them here with the necessary procedural update: "Phillip Feiock seeks relief from a judgment of contempt for failure to pay child support. His primary contention concerns the constitutionality of Code of Civil Procedure section 1209.5, which requires the court presume prima facie evidence of contempt after proof of noncompliance with a valid court order.

"Feiock was ordered to pay child support for his three children as part of a dissolution action. Thereafter, in 1983 the district attorney filed an action under the Uniform Reciprocal Enforcement of Support Act, which resulted in a temporary support order of $150 per month. Feiock's failure to pay anything between September of 1984 and February of 1985 resulted in a contempt action brought by the district attorney.

"At the adjudicated contempt hearing, the parties stipulated there was a valid court order requiring Feiock to pay $150 per month directly to the district attorney's office. They also agreed Feiock was present in court when the order was made. The prosecution then offered documentary evidence from its own internal records showing Feiock's poor payment history. . . . [A]n employee familiar with the record-keeping procedures testified . . . [about those documents]. Feiock's motion for [nonsuit] was denied after the judge ruled the presumption mandated by Code of Civil Procedure section 1209.5 applied. Feiock then testified, essentially trying to prove his inability to pay the court-ordered support. Regardless, the trial judge sustained the

majority of the contempt allegations." (*In re Feiock, supra,* 180 Cal.App.3d at pp. 651-652.)

In the prior proceedings in this court, Feiock argued that section 1209.5[1] created the type of mandatory presumption found violative of the due process clause in *Sandstrom* v. *Montana* (1979) 442 U.S. 510 [61 L.Ed.2d 39, 99 S.Ct. 2450] and *People* v. *Roder* (1983) 33 Cal.3d 491 [189 Cal.Rptr. 501, 658 P.2d 1302].[2] The district attorney argued that *Martin* v. *Superior Court* (1971) 17 Cal.App.3d 412 [95 Cal.Rptr. 110] had correctly held the section constitutional because there was a rational connection between the fact proved and the fact presumed.[3] Based upon these arguments, we agreed with Feiock, since *Martin* predated *Sandstrom* and *Roder* and used a standard rejected by those cases, and since the connection between the proved facts and the presumed fact was not compelling.

After hearing the case, the United States Supreme Court remanded the cause to this court to determine whether the contempt here was civil or criminal, opining that the former does not trigger application of the due process clause to presumptions. (*Hicks* v. *Feiock, supra,* 485 U.S. 624, 637 [99 L.Ed.2d 721, 735].) In reaching this conclusion, the high court deferred to state law on two points subsumed within our holding: ability to pay is an element of the contempt rather than a defense, and the "presumption" shifts the burden of proof rather than the burden of producing evidence.[4]

Upon this remand, we are presented with the issue whether ability to pay is an affirmative defense. Before deciding it, we discuss the threshold question whether the proceeding here was a civil or criminal contempt.

## II

■ In a nutshell, the Supreme Court opined that a contempt is civil for federal constitutional purposes if the order of contempt ultimately entered

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise specified.

[2] Section 1209.5 provides: "When a court . . . makes an order compelling a parent to furnish support . . . , proof that such order was made, filed, and served on the parent or proof that the parent was present in court at the time the order was pronounced and proof of noncompliance therewith shall be prima facie evidence of a contempt of court." The purported presumption that flowed from the proof mentioned in the section was that the parent had an ability to pay. As will be discussed, *infra,* the section does not create a presumption at all; rather, it makes inability to pay an affirmative defense.

[3] The district attorney alternatively argued that under *Roder* "[t]he close connection and identity between the proven and presumptive facts *compels* the inference of Petitioner's guilt beyond a reasonable doubt, and it is no violation of due process to shift the burden of going forward with the evidence to the Defendant."

[4] Those points had also been subsumed in *Martin.* We adopted them without discussion in deciding the issues presented by the parties: whether *Roder* had overruled *Martin* sub silentio and whether section 1209.5 comported with the mandate of *Roder.*

allows the contemner to purge the contempt by performing an act complete-ly within the contemner's control. In such circumstances the due process considerations discussed in *People* v. *Roder, supra,* 33 Cal.3d 491, are inap-plicable. If the contemner does not have the power to purge the contempt, the proceedings are deemed criminal. (*Hicks* v. *Feiock, supra,* 485 U.S. 624, 638-640 [99 L.Ed.2d 721, 735-737].)

Using that standard, the proceedings here were unmistakably criminal in nature. It is true, as noted by the Supreme Court, that Feiock had a chance to pay off the arrearage of $1,650 within the 36-month probationary period at the ordered rate of $50 per month. However, there is not a hint in the order that the probation—considered a penalty by the Supreme Court—would terminate when the arrearage was paid off.

The judgment suspends 25 days of jail time over Feiock's head and requires that he pay $150 per month in current child support. By the plain terms of the judgment, that obligation continues for the entire term of the probation. The section of the preprinted judgment form providing for fur-ther hearing for modification is not checked. Feiock's penalty for disobedi-ence of the original child support order was a 36-month certain probation-ary period with the prospect of 25 days in jail if he violated its terms.

There was nothing Feiock could do, per the terms of the judgment, to alter this fact.[5] He was subjected to criminal contempt proceedings.[6]

---

[5] The contempt statutes do not provide for probation or any modification of it. (See, e.g., § 1218.) The Supreme Court gave cursory approval to grants of probation in contempt cases in *Hicks* v. *Feiock, supra,* 485 U.S. 624, 637, fn. 8 [99 L.Ed.2d 721, 735]. However, even if we assume a court has the power to grant probation and to modify the terms of it to allow Feiock to purge, that power would rest with the court, not with Feiock. (Cf. Pen. Code, § 1203.3.)

[6] We reach this conclusion using the Supreme Court's analysis for the civil versus criminal determination. Although binding upon us for purposes of federal constitutional law, it might be well to consider a different standard under the California Constitution to determine which California contemners should be provided greater due process rights.

With all due respect, we see two problems with the "ability to purge" approach taken by the Supreme Court. First, neither the parties nor the court knows what type of proceedings they are in until judgment is pronounced. This surely would produce innumerable logistical nightmares, not to mention due process notice problems. (See *In re Liu* (1969) 273 Cal.App.2d 135, 141-142 [78 Cal.Rptr. 85].) On the other hand, giving notice of the remedy sought before the fact might prevent the court from fashioning the best remedy.

More importantly, because the consequences of a "civil" contempt are potentially *greater* than those of a "criminal" one, the procedural protection in those cases should be the same or stronger. Child support cases provide a perfect example. In each type of proceeding, abili-ty to pay can be an issue. But a criminal contempt conviction results in no more than a five-day jail term and a $1,000 fine for each contempt, while a civil contemner may be imprisoned *indefinitely* pending compliance. (§§ 1218, 1219.) Thus, the consequences of a mistake on the ability to pay issue are infinitely graver in a civil than in a criminal contempt. Pity the poor civil contemner who rots in jail, having erroneously been determined to hold the key to release!

## III

■ Nevertheless, the trial court correctly denied the motion for nonsuit. For many years in California ability to pay has been considered, without much analysis, to be a matter of defense in contempt proceedings. (*Lyon* v. *Superior Court* (1968) 68 Cal.2d 446, 451 [67 Cal.Rptr. 265, 439 P.2d 1]; *In re McCarty* (1908) 154 Cal. 534, 537 [98 P. 540]; *Galland* v. *Galland* (1872) 44 Cal. 475, 478; *Lyons* v. *Municipal Court* (1977) 75 Cal.App.3d 829, 838 [142 Cal.Rptr. 449]; *Martin* v. *Superior Court, supra,* 17 Cal.App.3d 412, 417; *Sorell* v. *Superior Court* (1967) 248 Cal.App.2d 157, 161 [56 Cal.Rptr. 222]; compare *Mery* v. *Superior Court* (1937) 9 Cal.2d 379 [70 P.2d 932]; *Warner* v. *Superior Court* (1954) 126 Cal.App.2d 821 [273 P.2d 89].)[7]

This approach is consistent with legislative intent, constitutional law, and common sense. When this case was first before this court, the parties and the court all assumed that section 1209.5 dealt with an evidentiary presumption. It does not.

The section was enacted in response to *Warner* v. *Superior Court, supra,* 126 Cal.App.2d 821. (Rev. of 1955 Code Legislation (U. of Cal. Ext., 1955) p. 129.) *Warner* held that ability to pay was an element of contempt which had to be alleged in the affidavit and proved by the petitioner in contempt proceedings. The Legislature's purpose in enacting the section was to nullify *Warner* insofar as it made ability to pay an element.[8]

---

The preferable rule in contempt proceedings might be that the more stringent due process protections apply whenever the contemner is faced with the potential for *any* jail time. Indeed, California courts have traditionally assumed or held that all contempts are at least quasi-criminal in nature. (See *In re Coleman* (1974) 12 Cal.3d 568, 572 [116 Cal.Rptr. 381, 526 P.2d 533]; *City of Culver City* v. *Superior Court* (1952) 38 Cal.2d 535, 541 [241 P.2d 258]; *Martin* v. *Superior Court, supra,* 17 Cal.App.3d 412, 416; *In re Liu, supra,* 273 Cal.App.2d 135, 141; cf. *People* v. *Derner* (1986) 182 Cal.App.3d 588, 592 [227 Cal.Rptr. 344].) Nonetheless, we do not announce an independent state-ground rule here. Since the contempt was criminal under either standard, we choose the most conservative analysis, that provided under the federal Constitution.

[7] The dissent goes to great lengths to show that a number of the cases cited above do not *hold* that ability to pay is not an element of contempt. As we shall discuss, that analysis is unnecessary since the Legislature has spoken and said that it is not. We merely cite these cases as a historical preface to the legislation. What we said about them is true; they do assume without much analysis that ability to pay is not an element. *Mery* v. *Superior Court, supra,* 9 Cal.2d 379, and *Warner* v. *Superior Court, supra,* 126 Cal.App.2d 821, as well as *Coursey* v. *Superior Court* (1987) 194 Cal.App.3d 147, 154 [239 Cal.Rptr. 365], cited by the dissent, reached contrary results, also without much analysis. Section 1209.5 is not surplusage as the dissent suggests. It statutorily settled the elements of contempt in child support cases.

[8] This answers the dissent's question on why *People* v. *Roder, supra,* 33 Cal.3d 491 does not apply here. In *Roder* the court dealt with an *express* statutory element which could be established by an *express* statutory presumption. The evil was not that it was applied to a particular class, but that it was applied at all. Here, ability to pay is just not an element; it is a defense.

The language of the statute strongly suggests this is true. Rather than say that "ability to pay" shall be presumed from proof of the basic facts, the section states that proof of the order, knowledge of it, and noncompliance "shall be prima facie evidence of a contempt of court." (§ 1209.5.) In other words, proof of these basic facts proves the entire contempt. Once the contempt is proved any excuse or justification, such as ability to pay, is a matter of defense. We must adhere to this plain meaning of the statute. (*Planned Parenthood Affiliates* v. *Swoap* (1985) 173 Cal.App.3d 1187, 1193 [219 Cal.Rptr. 664].)[9]

Court decisions have long upheld the constitutionality of legislation making issues such as inability to pay matters of defense. (See *Martin* v. *Ohio* (1987) 480 U.S. 228 [94 L.Ed.2d 267, 107 S.Ct. 1098]; *Engle* v. *Isaac* (1982) 456 U.S. 107, 120 [71 L.Ed.2d 783, 795-796, 102 S.Ct. 1558]; *Patterson* v. *New York* (1977) 432 U.S. 197, 201-202 [53 L.Ed.2d 281, 286-287, 97 S.Ct. 2319]; *Mullaney* v. *Wilbur* (1975) 421 U.S. 684, 691 [44 L.Ed.2d 508, 515-516, 95 S.Ct. 1881]; *Leland* v. *Oregon* (1952) 343 U.S. 790 [96 L.Ed. 1302, 72 S.Ct. 1002]; *People* v. *Babbitt* (1988) 45 Cal.3d 660, 693 [248 Cal.Rptr. 69, 755 P.2d 253]; *People* v. *Tewksbury* (1976) 15 Cal.3d 953, 963-964 [127 Cal.Rptr. 135, 544 P.2d 1335]; *People* v. *Montalvo* (1971) 4 Cal.3d 328, 333 [93 Cal.Rptr. 581, 482 P.2d 205, 49 A.L.R.3d 518].) As noted in *Martin* v. *Ohio, supra,* 480 U.S. 228, 235 [94 L.Ed.2d 267, 275], "[T]he common law rule was that affirmative defenses . . . , were matters for the defendant to prove. 'This was the rule when the Fifth Amendment was adopted, and it was the American rule when the Fourteenth Amendment was ratified.'" Thus, there is no constitutional impediment to making inability to pay an affirmative defense, at least if there is some rational basis for doing so. (*Patterson* v. *New York, supra,* 432 U.S. at p. 203, fn. 9 [53 L.Ed.2d at pp. 287-288].)[10]

Common sense dictates that the contemner raise inability to pay. The contemner is the person in the best position to know whether inability to

---

[9] The dissent holds fast to the opinion that ability to pay is somehow an element of child support contempt. It does so without explaining how this could be when the statute was enacted in response to *Warner* v. *Superior Court, supra,* 126 Cal.App.2d 821, and lists all of the traditional elements of contempt as constituting the prima facie case without mentioning ability to pay. "Elements are elements." (Conc. & dis. opn., *post,* p. 153.) Notwithstanding what petitioner pleaded, the finding of contempt depended only upon establishing those elements set forth in section 1209.5. (§ 1211.5 subds. (a) & (c).) With all due respect to the Judicial Council, it does not dictate our resolution of the law. (Conc. and dis. opn., *post,* pp. 149-150.)

[10] The dissent implies (conc. and dis. opn., *post,* p. 153) we are casting aside constitutional principles to facilitate collection of child support. Not so. The foregoing authority amply supports the constitutionality of the Legislature's action. The dissent does not suggest why these cases are not applicable. Indeed, in *Patterson, supra,* 432 U.S. 197, our nation's highest court upheld a statutory scheme where malice was *not* required for a finding of murder. Such decisions are within the power of the legislative branch.

pay is even a consideration in the proceeding and also has the best access to evidence on the issue, particularly in cases of self-employment.[11] Considerations of policy and convenience have led courts to sanction placement of the burden of establishing a defense on defendants under similar circumstances. (*People* v. *Babbitt, supra,* 45 Cal.3d 660, 693 [unconsciousness]; *People* v. *Vogel* (1956) 46 Cal.2d 798, 803 [299 P.2d 850] [good faith marriage in bigamy prosecution]; *People* v. *Wells* (1938) 10 Cal.2d 610, 617 [76 P.2d 493] [mitigation in homicide prosecution]; *People* v. *Yoshimura* (1979) 91 Cal.App.3d 609, 626 [154 Cal.Rptr. 314] [permit for otherwise unlawful articles]; *People* v. *Condley* (1977) 69 Cal.App.3d 999, 1013 [138 Cal.Rptr. 515] [escape due to necessity].)

Making inability to pay a matter of defense does not place too harsh a burden on the contemner. Since inability to pay goes to the heart of the contempt, the contemner's task is merely to raise the issue of his ability to pay. The petitioner's burden then remains to prove the contempt beyond a reasonable doubt, including ability to pay. (*People* v. *Figueroa* (1986) 41 Cal.3d 714, 721 [224 Cal.Rptr. 719, 715 P.2d 680]; *People* v. *Tewksbury, supra,* 15 Cal.3d 953.) It also eliminates the district attorney's concern that proof of the contempt would be unreasonably difficult if ability to pay were an element, yet minimizes the prospect that a truly indigent contemnor will end up in what is tantamount to debtor's prison.

## IV

Feiock's remaining contentions are easily resolved. His assertions that the temporary support order expired by its own terms in February 1985 and that the order was vague and ambiguous may not be raised here, since he expressly did not raise those issues below. (*In re Farr* (1974) 36 Cal.App.3d 577 [111 Cal.Rptr. 649].)[12]

Likewise, it appears that Feiock did not raise below his contention that the pay records from the district attorney's office were not business records falling within the exception to the hearsay rule. (Evid. Code, § 1271.) He

---

[11] There is also some attractiveness to the district attorney's argument that the contemner should be the party to raise the issue of inability to pay since there has already been one judicial determination of ability to pay, and since the contemner has the right to seek a modification of ordered payments upon changed circumstances. However, we hesitate to make this contention the sole basis for making ability to pay a matter of affirmative defense. Ability to pay can literally change within a day—the day the contemner hears, "You're fired." Under such circumstances it is unlikely that the potential contemner will rush right out and spend money—assuming there is any—on an attorney to seek a modification.

[12] Feiock's counsel below made an initial comment about the vagueness of the original order. However, a careful reading of the record reveals that this purported ambiguity concerned to whom Feiock was to make his payments, a question which counsel later acknowledged had been cleared up. Counsel expressly stated that the order was not ambiguous.

insists the documents were prepared primarily for litigation. (See *Palmer* v. *Hoffman* (1942) 318 U.S. 109 [87 L.Ed. 645, 63 S.Ct. 477, 144 A.L.R. 719].) Even if the argument is properly before us, we reject it. Although the district attorney's office is a prosecuting agency and pay records are valuable in contempt proceedings, there was no showing in the trial court that these records were "self-serving" or "prepared specifically for litigation." (*County of Sonoma* v. *Grant W.* (1986) 187 Cal.App.3d 1439, 1452 [232 Cal.Rptr. 471].) Records of payment are classic examples of business records and are regularly maintained for all individuals paying support through the district attorney's family support division.

Lastly, Feiock argues that at the time the original order issued, there was no finding of ability to pay. This is simply not true. Although Feiock was self-employed and any income projection was somewhat tenuous, he estimated at the hearing that he would be netting approximately $1,200 per month above housing expenses. The court, while recognizing his income could change, reasonably found Feiock had the ability to pay $150 per month.

The order to show cause is discharged and the petition for writ is denied.

Scoville, P. J., concurred.

**SONENSHINE, J.,** Concurring and Dissenting.—I agree with the majority's decision the proceedings here were unmistakably criminal in nature. I disagree, however, with the majority's holding the trial court correctly denied the motion for nonsuit. As we said in our original opinion (*In re Feiock* (1986) 180 Cal.App.3d 649 [225 Cal.Rptr. 748]), Code of Civil Procedure section 1209.5 unconstitutionally lessens the moving party's burden of proof.

The majority contends our original analysis was incorrect because "ability to pay" is an affirmative defense to this type of contempt, and not an element of the offense. We were not wrong. As I shall explain, the ability to comply with the court's order is a necessary element of proving contempt of a court order; the moving party bears the burden of proving that element.

Petitioner was alleged to have violated the general contempt statute: Code of Civil Procedure section 1209. "Disobedience of any lawful judgment, order, or process of the court" constitutes contempt under Code of Civil Procedure section 1209, subdivision (a)(5). Section 1211 of the Code of Civil Procedure outlines the procedure for initiating this type of contempt: "When the contempt is not committed in the immediate view and presence of the court, or of the judge at chambers, an affidavit shall be presented to the court or judge of the facts constituting the contempt

. . . ." "The affidavit is like a complaint in a criminal case; it frames the issues and must charge facts which show a contempt has been committed. [Citations.]" (*Reliable Enterprises, Inc.* v. *Superior Court* (1984) 158 Cal.App.3d 604, 616 [204 Cal.Rptr. 786].)

Examining the affidavit here, we note the moving party used a form adopted by the Judicial Council. (Rule 1285.60, Cal. Rules of Court [eff. Jan. 1, 1980].) Specifically, the form "Order to Show Cause and Declaration for Contempt" filed by the county district attorney alleged petitioner "has willfully disobeyed certain orders of this court as set forth in this declaration . . . (a) Citee had knowledge of the order in that . . . He was present in court on June 22, 1984, and was served a copy of ORDER/STIPULATION RE SUPPORT/PATERNITY/WELFARE REIMBURSE- MENT . . . (b) Citee was able to comply with each order when it was disobeyed." The declaration delineated each order disobeyed.

Significantly, the form affidavit includes the allegation that petitioner "was able to comply with each order when it was disobeyed." From this we know the Judicial Council acknowledges ability to comply with the court's order is a necessary element of the offense. More importantly, this illustrates the fallacy of the majority's statement that "[f]or many years in California ability to pay has been considered, without much analysis, to be a matter of defense in contempt proceedings." (*Ante,* p. 146.) Rather, the contrary is true.

Only one of the cited cases stands for the majority's statement that ability to pay is a matter of defense, *In re McCarty* (1908) 154 Cal. 534 [98 P. 540]. The *McCarty* court, however, reached that conclusion in the context of a civil contempt. (See fn. 1, *post,* p. 154.) The court concluded McCarty bore the burden of proving inability to pay in order to purge himself of the contempt for failure to pay alimony. The procedure is different in the context of a criminal contempt.

The other cases listed do not support the proposition for which they are cited. In *Lyon* v. *Superior Court* (1968) 68 Cal.2d 446, 451 [67 Cal.Rptr. 265, 439 P.2d 1], the court upheld contempt orders despite the argument the trial court had failed to specifically delineate its contempt findings. In rejecting that argument the *Lyon* court quoted from a 1959 South Dakota case which said, "We are of the opinion that unless a defendant shows he has complied with the court's order to the fullest extent of his ability his defense of inability fails." The quoted language was not at issue and not the language of our Supreme Court.

*Galland* v. *Galland* (1872) 44 Cal. 475 is similarly miscited. The trial court had refused to find Galland in contempt for failure to pay alimony.

And the Supreme Court affirmed that order as it was not claimed he had the ability to pay the money due, or that he had "contumaciously rendered himself unable to pay it." (*Id.*, at p. 478.) Similarly, *Lyons* v. *Municipal* (1977) 75 Cal.App.3d 829 [142 Cal.Rptr. 449] is inapposite. *Lyons* involved a father's claim he should have been charged in superior court with contempt rather than with the misdemeanor failure to support offense (Pen. Code, § 270). The *Lyons* court never described ability to pay as an affirmative defense. It merely paraphrased the statute at issue here—section 1209.5 of the Code of Civil Procedure—as a statute shifting the burden of producing evidence to the contemner. Next, *Martin* v. *Superior Court* (1971) 17 Cal.App.3d 412 [95 Cal.Rptr. 110] is the case with which we disagreed originally. *Martin* found Code of Civil Procedure section 1209.5 constitutional, utilizing case law no longer applicable. *Martin* does not hold that ability to pay is an affirmative defense. Rather, at the cited page, it lists various crimes where statutes can constitutionally shift the burden of proof or of going forward with the evidence. (*Id.*, at p. 417.)

The next cited case, *Sorell* v. *Superior Court* (1967) 248 Cal.App.2d 157 [56 Cal.Rptr. 222], relied on *McCarty,* but involved a wholly different type of order. Sorell was ordered to pay $100 for attorney fees in addition to $200 previously ordered to be paid. Implicit in the order was a requirement the payments be made forthwith. The court found an ability to pay at the time the orders to pay were made. And the court concluded the moving party did not have the burden to prove *present ability* to pay at the time of the contempt hearing two years later. That has nothing to do with whether the moving party has to prove ability to pay if the money is due at a later time. Indeed, the *Sorell* court recognized ability to comply with the order was an element of contempt. The court found the original order, which required payment forthwith, was proof enough of ability to pay. The question here is different because petitioner was directed to pay monies on certain specific dates in the future. Only his ability to pay *on those dates* is at issue.

*Mery* v. *Superior Court* (1937) 9 Cal.2d 379 [70 P.2d 932] refused to apply the *McCarty* rule, because the original order to pay was 10 years old. "The unreasonableness of such a rule in a case such as is presented here, where the affidavit in question was filed more than ten years after the order, must be obvious, because an adjudication of the defendant's ability to pay in 1926 is no sound proof of that fact under the conditions existing in 1936." *Warner* v. *Superior Court* (1954) 126 Cal.App.2d 821 [273 P.2d 89] is in accord with *Mery.* Warner's contempt was annulled because the moving party's affidavit did not allege ability to pay; therefore the court had no jurisdiction (lacking an essential element): "If mere evidence that petitioner was in arrears would support an adjudication of contempt the burden would

be cast upon him to overcome that evidence or to justify each and every failure to meet the payments. He would thus be required to affirmatively establish his innocence. . . . If the evidence against him does not establish his guilt the accused has nothing to controvert or explain." (*Id.*, at p. 826.)

In sum, the cases cited by the majority do not support its assertion ability to pay has "for many years" been considered "a matter of defense." Indeed, my research compels the opposite conclusion. As explained in *Warner,* "[t]he facts essential to establish jurisdiction [to punish disobedience of a court order by contempt are]: (1) the making of the order, (2) knowledge of the order, (3) ability of the respondent to render compliance, and (4) willful disobedience of the order." (126 Cal.App.2d at p. 824.) These elements of contempt apply across the board to any alleged contempt for violating a court order. The most recent case discussing this principle is *Coursey* v. *Superior Court* (1987) 194 Cal.App.3d 147 [239 Cal.Rptr. 365]. Coursey was found in contempt for disobeying an order that her daughter visit Coursey' s ex-husband, the child's father. The court annulled the contempt because there was no evidence Coursey could comply with the order; the daughter was 14 years old and there was no evidence the mother could make her visit the father.

After noting the general principles of a criminal contempt, the *Coursey* court remarked "the movant bears the burden of proof beyond a reasonable doubt [citation] which it must meet unaided by the proposed contemnee." (194 Cal.App.3d at p. 153.) "The facts essential to establish jurisdiction in the contempt proceeding, and thus to enable the trial court to punish the accused, are: (1) the making of the order; (2) the accused's knowledge of the order; (3) the accused's ability to render compliance, and (4) the accused's willful disobedience of the order." (*Id.*, at p. 154.) In this particular case the trial court found no justification for not complying with the visitation order. "In so finding the trial court erred. As noted, the burden of proof is on the movant to prove contempt beyond a reasonable doubt. [Citation.] By deducing the ability to comply from the absence of proof of substantial justification, the trial court impermissibly shifted the burden to Loretta to establish her *inability* to comply." (*Id.*, at p. 156.)

Another line of cases supports this analysis: In *Ex parte Todd* (1897) 119 Cal. 57, 58 [50 P. 1071], our Supreme Court voided a contempt based on a trial court finding the husband had failed to obtain employment though given ample opportunity to do so. "This order was clearly in excess of the power of the court, which cannot compel a man to seek employment in order to earn money to pay alimony, and punish him for his failure so to do." *Todd* and its progeny are cogently gathered in *In re Jennings* (1982) 133 Cal.App.3d 373 [184 Cal.Rptr. 53]. "Well-established case law provides that the courts may order support payments based upon the 'ability to earn'

as distinguished from actual income where there is a deliberate attempt on the part of a spouse to avoid family financial responsibility by refusing to seek employment; however, these cases do not address the availability of contempt. [Citations.] . . . 'In this proceeding we are not concerned with the problem that might arise if the defendant should refuse to pay the amounts ordered by the trial court. Under an early decision of this court a deliberate refusal to work could not be punished by contempt [*Todd*], *but ordinary judgment remedies would be available* and the judgment could be satisfied if defendant should inherit or otherwise obtain property. Moreover, the threat of execution upon any subsequently acquired property [ ] might be sufficient to induce defendant to work.' [Citation.]" (*Id.,* at p. 383, fn. omitted, italics added.) The same logic applies here: We do not simply cast aside basic constitutional principles because collecting support payments is difficult.

Even assuming there was case authority to support the majority's analysis, the end result is inconsistent. Indeed, if inability to pay is an affirmative defense, why did the Legislature enact Code of Civil Procedure section 1209.5? It is useless surplusage if the alleged contemner bears the burden of proving inability to comply with the court's order.

It is true the Legislature may define the elements of contempt, just as it defines the elements of any crime. But Code of Civil Procedure section 1209.5 only affects certain types of contempt for disobeying a court order; to-wit, contempt for failure to obey child support orders. Labeling this a righteous legislative prerogative offends logic because it purports to change the elements of contempt for only a limited type of offender. By the same token, then, the Legislature could change the elements of murder if a husband shoots his wife. Why not say the husband bears the burden of proving he did not harbor malice? After all, domestic problems are a nationwide problem, requiring special treatment. The answer, of course, lies in our constitutional guaranty of equal treatment under the law. The elements of a crime cannot vary depending on the players. Elements are elements.

Similarly, if the majority is correct, why did our Supreme Court find a portion of Penal Code section 496 unconstitutional in *People* v. *Roder* (1983) 33 Cal.3d 491 [189 Cal.Rptr. 501, 658 P.2d 1302]? That decision invalidated the statutory presumption of "guilty knowledge" applicable to second-hand dealers charged with receiving stolen property. There, the Legislature had attempted to create a separate crime of receiving stolen property for a special class who, in the eyes of the Legislature, should bear the burden of proving they did not know the property was stolen. Because knowledge of the property's stolen character is an element of the offense, however, the Legislature could not constitutionally shift that burden to the accused. (*Id.,* at p. 504.) The same principle applies here. Before this court

determines whether the Legislature can shift the burden, it must decide whether the issue to be shifted is an element which must be proven by the moving party.

As a former certified family law specialist and superior court family law judge, I am more than sympathetic with the problems created when parents fail to meet their support obligations. The situation has become a national blight adversely affecting not only our young but society as a whole. But recognition of the severity of the problem will not blind me to the unconstitutionality of the majority's remedy.[1]

Ability to comply with the court's order is an element of this type of contempt which must be proven affirmatively by the moving party. As we explained in our initial opinion, a statute which purports to shift that burden to the accused is unconstitutional. (*In re Feiock, supra,* 180 Cal.App.3d 649.)

I would annul the contempt.

Petitioner's application for review by the Supreme Court was denied January 25, 1990. Mosk, J., and Kaufman, J., were of the opinion that the application should be granted.

---

[1] Of course, I still find the presumption embodied in Code of Civil Procedure section 1209.5 applicable in *civil contempt proceedings.* In those proceedings the moving party would allege the same elements, but the statute would shift the burden of disproving ability to pay to the alleged contemner. In the absence of proof of inability to pay, the court could rely on the previous support order and make a contempt finding. Before putting the contemner in jail, however, to coerce payment of the overdue sums, the court would necessarily have to determine the contemner's then-present ability to pay arrearages. That is a separate question, distinguishable from the contemner's ability to pay sums when due. If the court finds present ability to pay a certain amount of what is past due, the contemner may be incarcerated until that amount is paid.

A constitutional remedy therefore still exists. Moreover, a criminal contempt could still be alleged. However, ability to pay would have to be established by the moving party.